# GUNTHER *v.* SAN DIEGO & ARIZONA EASTERN RAILWAY CO.

No. 27.  Argued November 8, 1965.—Decided December 8, 1965.

*Charles W. Decker* argued the cause for petitioner. With him on the brief was *Clifton Hildebrand.*

*Waldron A. Gregory* argued the cause for respondent. With him on the brief was *William R. Denton.*

*Clarence M. Mulholland, Edward J. Hickey, Jr.,* and *Richard R. Lyman* filed a brief for the Railway Labor Executives' Association, as *amicus curiae,* urging reversal.

MR. JUSTICE BLACK delivered the opinion of the Court.

The petitioner, Gunther, worked as a fireman for respondent railroad for eight years, from 1916 to 1924, and as an engineer for 30 years, from 1924 until December 30, 1954. On that date, shortly after his seventy-first birthday, he was removed from active service because of an alleged physical disability. The railroad's action was taken on the basis of reports made by its physicians, after physical examinations of petitioner, that in their opinion he was no longer physically qualified to work as a locomotive engineer because his "heart was in such condition that he would be likely to suffer an acute coronary episode." Dissatisfied with the railroad doctors' findings, Mr. Gunther went to a recognized specialist who, after examination, concluded that petitioner was qualified physically to continue work as an engineer. On the basis of this report petitioner requested the railroad to join him in the selection of a three-doctor board to re-examine his physical qualifications for return to service. The railroad refused. This disagreement led to prolonged litigation which has reached us 11 years after the controversy arose.

When the railroad refused to consent to the appointment of a new board of doctors to re-examine petitioner

or to restore him to service, he filed a claim for reinstatement and back pay with the Railroad Adjustment Board, which was created by § 3 of the Railway Labor Act, as amended,[1] to adjust, among other things, disputes of railroads and their employees "growing out of grievances or out of the interpretation or application of agreements concerning . . . rules, or working conditions . . . ."[2] The Adjustment Board, over the protests of the railroad, decided it had jurisdiction of the grievance and then, referring to past practice in similar cases, proceeded, as its findings show, to appoint a committee of three qualified physicians, to re-examine petitioner, "one chosen by carrier and one by the employe and the third by the two so selected, for the purpose of determining the facts as to claimant's disability and the propriety of his removal from service. . . ." Subsequently, this committee of doctors examined petitioner and decided by a majority vote that he was physically qualified to act as an engineer, contrary to the prior findings of the railroad's doctors. Upon the basis of these findings the Adjustment Board decided that the railroad had been wrong in disqualifying petitioner for service and sustained his claim "for reinstatement with pay for all time lost from October 15, 1955 . . . ." The railroad refused to comply with the Board's order and petitioner as authorized by the Act[3]

---

[1] 48 Stat. 1185, 45 U. S. C. § 151 *et seq.* (1964 ed.).

[2] Section 3 First (i), 48 Stat. 1191, 45 U. S. C. § 153 First (i) (1964 ed.). This section also provides that disputes between railroad employees and their employers "failing to reach an adjustment . . . may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes."

[3] Section 3 First (p), 48 Stat. 1192, 45 U. S. C. § 153 First (p) (1964 ed.), provides:

"If a carrier does not comply with an order of a division of the Adjustment Board within the time limit in such order, the petitioner . . . may file in the District Court of the United States for

filed this action in a district court of the United States for an appropriate court order to enforce the Adjustment Board's award. After hearings the District Court, in its third opinion in the case, held the award erroneous and refused to enforce it.[4] The District Court's refusal was based on its conclusion that there were no express or implied provisions in the collective bargaining contract which in the court's judgment limited in any way what it found to be the absolute right of the railroad, in absence of such provisions, to remove petitioner from active service whenever its physicians found in good faith "that plaintiff was physically disqualified from such service." The Court of Appeals affirmed, agreeing with the interpretation put upon the contract by the District Court, and thereby rejected the Board's interpretation of the contract and its decision on the merits of the dispute. 336 F. 2d 543. We granted certiorari because the holding of the two courts below seemed, in several respects, to run counter to the requirements of the Railway Labor Act as we have construed it. 380 U. S. 905.

I. Section 3 First (i) of the Railway Labor Act provides that "disputes between an employee or group of

the district in which he resides or in which is located the principal operating office of the carrier . . . a petition setting forth briefly . . . the order of the division of the Adjustment Board in the premises. Such suit in the District Court of the United States shall proceed in all respects as other civil suits, except that on the trial of such suit the findings and order of the division of the Adjustment Board shall be prima facie evidence of the facts therein stated . . . . The district courts are empowered, under the rules of the court governing actions at law, to make such order and enter such judgment, by writ of mandamus or otherwise, as may be appropriate to enforce or set aside the order of the division of the Adjustment Board."

[4] 192 F. Supp. 882, 198 F. Supp. 402. The third opinion written by the court is not reported.

employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements" are to be handled by the Adjustment Board. In § 3 Congress has established an expert body to settle "minor" grievances like petitioner's which arise from day to day in the railroad industry. The Railroad Adjustment Board, composed equally of representatives of management and labor is peculiarly familiar with the thorny problems and the whole range of grievances that constantly exist in the railroad world. Its membership is in daily contact with workers and employers, and knows the industry's language, customs, and practices. See *Slocum* v. *Delaware, L. & W. R. Co.*, 339 U. S. 239, 243–244. The Board's decision here fairly read shows that it construed the collective bargaining provisions which secured seniority rights, together with other provisions of the contract, as justifying an interpretation of the contract guaranteeing to petitioner "priority in service according to his seniority and pursuant to the agreement so long as he is physically qualified." The District Court, whose opinion was affirmed by the Court of Appeals, however, refused to accept the Board's interpretation of this contract. Paying strict attention only to the bare words of the contract and invoking old common-law rules for the interpretation of private employment contracts, the District Court found nothing in the agreement restricting the railroad's right to remove its employees for physical disability upon the good-faith findings of disability by its own physicians. Certainly it cannot be said that the Board's interpretation was wholly baseless and completely without reason. We hold that the District Court and the Court of Appeals as well went beyond their province in rejecting the Adjustment Board's interpretation of this railroad collective bargaining agreement. As hereafter pointed out Congress, in the Railway Labor Act, invested the Adjustment Board

with the broad power to arbitrate grievances and plainly intended that interpretation of these controversial provisions should be submitted for the decision of railroad men, both workers and management, serving on the Adjustment Board with their long experience and accepted expertise in this field.

II. The courts below were also of the opinion that the Board went beyond its jurisdiction in appointing a medical board of three physicians to decide for it the question of fact relating to petitioner's physical qualifications to act as an engineer. We do not agree. The Adjustment Board, of course, is not limited to common-law rules of evidence in obtaining information. The medical board was composed of three doctors, one of whom was appointed by the company, one by petitioner, and the third by these two doctors. This not only seems an eminently fair method of selecting doctors to perform this medical task but it appears from the record that it is commonly used in the railroad world for the very purpose it was used here. In fact the record shows that under respondent's present collective bargaining agreement with its engineers provision is made for determining a dispute precisely like the one before us by the appointment of a board of doctors in precisely the manner the Board used here. This Court has said that the Railway Labor Act's "provisions dealing with the Adjustment Board were to be considered as compulsory arbitration in this limited field." [5] On a question like the one before us here, involving the health of petitioner, and his physical ability to operate an engine, arbitrators would probably find it difficult to find a better method for arriving at the truth than by the use of doctors selected as these doctors were. We reject the idea that the Adjustment

---

[5] *Brotherhood of Railroad Trainmen* v. *Chicago River & Indiana R. Co.,* 353 U. S. 30, 39.

Board in some way breached its duty or went beyond its power in relying as it did upon the finding of this board of doctors.

III. Section 3 First (m) provides that Adjustment Board awards "shall be final and binding upon both parties to the dispute, except insofar as they shall contain a money award." [6] The award of the Board in this case, based on the central finding that petitioner was wrongfully removed from service is twofold, consisting both of an order of reinstatement and the money award for lost earnings. Thus there arises the question of whether the District Court may open up the Board's finding on the merits that the railroad wrongfully removed petitioner from his job merely because one part of the Board's order contained a money award. We hold it cannot. This Court time and again has emphasized and re-emphasized that Congress intended minor grievances of railroad workers to be decided finally by the Railroad Adjustment Board. In *Brotherhood of Railroad Trainmen* v. *Chicago River & Indiana R. Co.,* 353 U. S. 30, the Court gave a Board decision the same finality that a decision of arbitrators would have. In *Union Pacific R. Co.* v. *Price,* 360 U. S. 601, the Court discussed the legislative history of the Act at length and pointed out that it "was designed for effective and final decision of grievances which arise daily" and that its "statutory scheme cannot realistically be squared with the contention that Congress did not purpose to foreclose litigation in the courts over grievances submitted to and disposed of by the Board . . . ." 360 U. S., at 616. Also in *Locomotive Engineers* v. *Louisville & Nashville R. Co.,* 373 U. S. 33, the Court said that prior decisions of this Court had made it clear that the Adjustment Board provisions were to be considered as "compulsory arbitration in this lim-

---

[6] 48 Stat. 1191, 45 U. S. C. § 153 First (m) (1964 ed.).

ited field," p. 40, "the complete and final means for settling minor disputes," p. 39, and "a mandatory, exclusive, and comprehensive system for resolving grievance disputes." P. 38.

The Railway Labor Act as construed in the foregoing and other opinions of this Court does not allow a federal district court to review an Adjustment Board's determination of the merits of a grievance merely because a part of the Board's award, growing from its determination on the merits, is a money award. The basic grievance here—that is, the complaint that petitioner has been wrongfully removed from active service as an engineer because of health—has been finally, completely, and irrevocably settled by the Adjustment Board's decision. Consequently, the merits of the wrongful removal issue as decided by the Adjustment Board must be accepted by the District Court.

IV. There remains the question of further proceedings in this case with respect to the money aspect of the Board's award. The Board did not determine the amount of back pay due petitioner on account of his wrongful removal from service. It merely sustained petitioner's claim for "reinstatement with pay for all time lost from October 15, 1955." Though the Board's finding on the merits of the wrongful discharge must be accepted by the District Court, it has power under the Act to determine the size of the money award. The distinction between court review of the merits of a grievance and the size of the money award was drawn in *Locomotive Engineers* v. *Louisville & Nashville R. Co., supra,* at pp. 40–41, when it was said that the computation of a time-lost award is "an issue wholly separable from the merits of the wrongful discharge issue." On this separable issue the District Court may determine in this action how much time has been lost by reason of the wrongful removal of petitioner from active service, and

any proper issues that can be raised with reference to the amount of money necessary to compensate for the time lost. In deciding this issue as to how much money petitioner will be entitled to receive because of lost time, the District Court will bear in mind the fact that the decision on the merits of the wrongful removal issue related to the time when the Board heard and decided the case. Seven years have elapsed since that time, long enough for many changes to have occurred in connection with petitioner's health. This would, of course, be relevant in determining the amount of money to be paid him in a lawsuit which can, as the statute provides, proceed on this separable issue "in all respects as other civil suits" where damages must be determined.

The judgments of the courts below are reversed and the cause is remanded to the District Court for consideration not inconsistent with this opinion.

*Reversed and remanded.*