**BROTHERHOOD OF RAILROAD SIGNALMEN OF AMERICA,**
Plaintiff,

v.

**SOUTHERN RAILWAY COMPANY, a**
Corporation, Defendant.

No. C-2-G-65.

United States District Court
M. D. North Carolina,
Greensboro Division.

May 25, 1966.

Charles T. Boyd, Greensboro, N. C., and Harold C. Heiss, Cleveland, Ohio, for plaintiff.

C. T. Leonard, Jr., Greensboro, N. C., for defendant.

FINDINGS OF FACT AND CONCLUSIONS OF LAW AND OPINION

EDWIN M. STANLEY, Chief Judge.

This is an action to enforce Award No. 11733 of the National Railroad Adjustment Board, Third Division, dated September 26, 1963. The Board determined that the defendant had violated its collective bargaining agreement with the plaintiff, and granted an award of three hours' pro rata pay to three employees of the Railroad. The employees were members of the craft represented by the Brotherhood.

The case was tried by the Court without a jury. After considering the pleadings, stipulations, and other evidence, including exhibits, and briefs and oral arguments of counsel, the Court makes and files herein its Findings of Fact and Conclusions of Law, separately stated:

FINDINGS OF FACT

1. The plaintiff is an unincorporated labor organization, and is the representative under the Railway Labor Act of the class of signalmen, signal maintainers and signal helpers employed by the defendant.

2. The defendant is a corporation organized and existing under the laws of the Commonwealth of Virginia, and maintains its principal office in Washington, D. C. The defendant is engaged in the business of a common carrier by railroad, and operates in interstate commerce.

3. There was in effect in 1957, and thereafter, a collective bargaining agreement between the plaintiff and the defendant covering the rules, rates of pay, hours of service and working conditions of the signalmen craft.

4. On July 1, 1957, three replacement poles for an electrical transmission line were installed for defendant at High Point, North Carolina, by an outside contractor. The installation of the poles took three hours.

5. The plaintiff, on behalf of five named individuals who were members of the plaintiff, filed claims with the defendant for eight hours pay for each named employee, asserting that the signalmen were entitled to perform the work of installing said poles and that the defendant had violated the collective bargaining agreement by employing an outside contractor for that purpose. The defendant declined to pay the claims and the matter was submitted to the National Railroad Adjustment Board, Third Division, pursuant to Section 153, First(i), of the Railway Labor Act, 45 U.S.C. § 153, First(i).

6. On September 26, 1963, the National Railroad Adjustment Board, Third Division, made Award No. 11733, finding that three of the named employees were each entitled to receive from the defendant three hours of pay at straight time rates. An order was entered directing the defendant to comply with the award on or before December 1, 1963. The award contains no finding that any time was lost by any member of the signalmen craft by reason of the violation found to have occurred, and no basis was assigned for the amount of the award.

7. The defendant declined to comply with the order of the Adjustment Board,

and this suit was instituted by the plaintiff to enforce said award. The three employees who would have been entitled to perform the work in High Point, on July 1, 1957, under the award of the Adjustment Board, were designated by plaintiff as C. J. Dorminey, J. J. Cartee, and E. M. Suthard.

8. J. J. Cartee, one of those originally designated by the plaintiff as a claimant in this action, informed the General Chairman of the Brotherhood of Railroad Signalmen, by letter dated December 28, 1965, that he had no further interest in the claim and desired "to be dismissed from any further occurrences," and the plaintiff has withdrawn the portion of the claim which relates to J. J. Cartee.

9. On July 1, 1957, C. J. Dorminey was employed by the defendant as a signalman, and the hourly rate of pay on that date for signalmen was $2.296.

10. On July 1, 1957, E. M. Suthard was employed by the defendant as an assistant signalman, and the hourly rate of pay for this position on that date was $2.188.

11. On July 1, 1957, C. J. Dorminey and E. M. Suthard each worked eight hours on signal work assigned to them by the defendant at a derailment at milepost 374.5 near Charlotte, North Carolina, and were paid their regular rate of pay for such work. C. J. Dorminey worked eight hours per day on each of the regular work days during the period July 1 through July 15, 1957, which work days were July 1, 2, 3, 4, 5, 8, 9, 10, 11, 12 and 15, and was paid for all such work at the regular rate, except for July 4, 1957, for which he was paid a double rate for working on a holiday. E. M. Suthard worked eight hours per day on each of the regular work days during the period July 1 through July 12, 1957, which work days were July 1, 2, 3, 4, 5, 8, 9, 10, 11 and 12, and was paid for such work on a straight time basis, except for the eight hours worked on July 4, 1957, for which he was paid at the double time rate. Mr. Suthard was on vacation on July 15 and was paid for eight hours work for that day of vacation.

12. The work performed on July 1, 1957, by C. J. Dorminey and E. M. Suthard was performed during the day shift, 7:30 a. m. to 4:00 p. m., with a meal period of thirty minutes.

13. Signalmen occasionally work overtime when requested by the defendant railroad. Such overtime work is utilized only in an emergency situation, and is discouraged by the defendant.

14. The record contains no evidence of any loss of time, work, or pay by either C. J. Dorminey or E. M. Suthard, the individuals designated as entitled to receive the monetary award, that can be attributed to the performance of the work by the outside contractor, and there is no evidence of any pecuniary loss suffered by these individuals.

15. The collective bargaining agreement between the plaintiff and the defendant contains no provision for either liquidated or punitive damages for technical violations of the agreement.

## DISCUSSION

The award of the National Railroad Adjustment Board is twofold. The first part of the award relates to a finding that the defendant violated its collective bargaining agreement with the plaintiff by permitting an outside contractor, rather than the individual claimants, to install three signal poles on its right-of-way near High Point, North Carolina. The second part of the award consists of a money award granting the individual claimants "three hours' pro rata pay." Section 3, First(m) of the Railway Labor Act, 45 U.S.C. § 153, First(m), provides that Adjustment Board awards "shall be final and binding upon both parties to the dispute, except insofar as they shall contain a money award." Thus, while the merits of the finding of the Adjustment Board with reference to a violation of the collective bargaining agreement must be accepted, the Court has the power to determine the validity and amount of the money award.

The province of the court in actions to enforce awards by the National Railroad Adjustment Board is clearly defined in the recent case of Gunther v. San Diego & A. E. R. Co., 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965), as follows:

"We hold that the District Court and the Court of Appeals as well went beyond their province in rejecting the Adjustment Board's interpretation of this railroad collective bargaining agreement. As hereafter pointed out Congress, in the Railway Labor Act, invested the Adjustment Board with the broad power to arbitrate grievances and plainly intended that interpretation of these controversial provisions should be submitted for the decision of railroad men, both workers and management, acting on the Adjustment Board with their long experience and accepted expertise in this field.

\* \* \* \* \* \*

"The award of the Board in this case, based on the central finding that petitioner was wrongfully removed from service is two-fold, consisting both of an order of reinstatement and the money award for lost earnings. Thus there arises the question of whether the District Court may open up the Board's finding on the merits that the railroad wrongfully removed petitioner from his job merely because one part of the Board's order contained a money award. *We hold it cannot.* This Court time and again has emphasized and re-emphasized that Congress intended minor grievances of railroad workers to be decided finally by the Railroad Adjustment Board.

"The Railway Labor Act as construed in the foregoing and other opinions of this Court does not allow a federal district court to review an Adjustment Board's determination of the merits of a grievance merely because a part of the Board's award, growing from its determination on the merits, is a money award. *The basic grievance here—that is, the complaint that petitioner has been wrongfully removed from active service as an engineer because of health—has been finally, com-*

*pletely, and irrevocably settled by the Adjustment Board's decision. Consequently, the merits of the wrongful removal issue as decided by the Adjustment Board must be accepted by the District Court.*

"Though the Board's finding on the merits of the wrongful discharge must be accepted by the District Court, it has power under the Act to determine the size of the money award. The distinction between court review of the merits of a grievance and the size of the money award was drawn in Locomotive Engineers v. Louisville & Nashville R. Co., supra, 373 U.S. 33, at pp. 40–41, 83 S.Ct. 1059, pp. 1063, 1064, 10 L.Ed.2d 172, when it was said that the computation of a time-lost award is 'an issue wholly separable from the merits of the wrongful discharge issue.' On this separable issue the District Court may determine in this action how much time has been lost by reason of the wrongful removal of petitioner from active service, and any proper issues that can be raised with reference to the amount of money necessary to compensate for the time lost." (Emphasis supplied.)

Since the Adjustment Board has "finally, completely, and irrevocably" settled the grievance that the defendant violated its collective bargaining agreement with the plaintiff by employing an outside contractor to install the three signal poles on its right-of-way, there remains for consideration the validity and size of the money award. In determining this separable issue, the Court is to proceed "in all respects as other civil suits" where damages must be determined. 45 U.S.C. § 153, First(p); Gunther v. San Diego & A. E. R. Co., supra.

There was no evidence that the individual claimants suffered any reduction in earnings or loss of wages by reason of the violation of the collective bargaining agreement. Under these circumstances, to award the claimants additional pay would be imposing sanctions or penalties against the defendant. A breach of contract entitles the wronged party only to compensation for any injury he may have suffered. He is not entitled to exact a penalty from the defendant when no injury occurred. Thus, if an employee is wrongfully discharged, he may recover what he would have received had there been no breach, reduced by what he earned or might have earned in other employment. The measure of damages for breach of contract is stated in United Protective Workers of America, Local No. 2, v. Ford Motor Co., 7 Cir., 223 F.2d 49, 48 A.L.R.2d 1285 (1955), as follows:

"The dispute before us arose because the parties interpreted their contract differently, and the principles of law involved had not been clearly settled previously. There was no bad faith or misconduct on either side. Although Ford was subsequently found to have breached the contract, it is not a wrongdoer in the tort sense. There is no justification for an award with even the flavor of punitive damages. The only appropriate measure of damages is compensation."

The plaintiff has cited no case, and none has been found, which holds that individual claimants are entitled to anything more than compensation for the injury they suffered. Since they were compensated for a full day's work on the day in question, to award anything more than nominal damages would amount to the imposition of a penalty against the defendant. There is no justification, in law or in equity, for such a penalty. "Collective bargaining agreements like other contracts are to be given a reasonable construction, not one which results in injustice and absurdity." Atlantic Coast Line R. Co. v. Brotherhood of Ry., Etc., 4 Cir., 210 F.2d 812 (1954).

The case of Brotherhood of Railroad Trainmen v. Denver & R. G. W. R. Co., 10 Cir., 338 F.2d 407 (1964), cert. den. 380 U.S. 972, 85 S.Ct. 1330, 1342, 14 L.Ed.2d 268 (1965), decided the identical question now before the Court. There, as here, the plaintiff Brotherhood failed to establish any financial loss to any of the

individual claimants from the violation, and the district court held that recovery was limited to nominal damages. The Court of Appeals, in affirming the trial court, held:

"Although the Board order awards to the individual appellants a full day's pay for each claim filed, both the findings and the order of the Board make no mention of the basis for the amount of the award. And since the parties have stipulated that the aggrieved employees have suffered no actual monetary loss or hardship from the contract violation, both the weight of the Board order as evidence of fact and the presumptive correctness of the Board order, Elgin, Joliet & Eastern Ry. Co. v. Burley, 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928, are completely dissipated. The District Court, then proceeding as in 'other civil suits,' limited the award to nominal damages and refused enforcement of the Board order to a greater extent.

"The collective bargaining agreement contains neither a provision for liquidated damages nor punitive provisions for technical violations. The Board has no specific power to employ sanctions and such power cannot be inferred as a corollary to the Railway Labor Act. See Priebe & Sons v. United States, 332 U.S. 407, 413, 68 S.Ct. 123, 92 L.Ed. 32. And if, as counsel for the Brotherhood contends, there exists within the industry a long established and accepted custom to pay what would amount to a windfall for contract violations such as here occurred, such custom was not established by finding, nor requested as a finding, in the procedures before either the Board or the District Court. We conclude that the District Court correctly determined that the instant case is governed by the general law of damages relating to contracts; that one injured by breach of an employment contract is limited to the amount he would have earned under the contract less such sums as he in fact earned. Atlantic Coast Line R. Co. v. Brother-

hood of Ry. Clerks, 4 Cir., 210 F.2d 812, 815; United Protective Workers of America, Local No. 2 v. Ford Motor Co., 7 Cir., 223 F.2d 49, 53–54, 48 A.L.R.2d 1285. Absent actual loss, recovery is properly limited to nominal damages. Oklahoma Natural Gas Corp. v. Municipal Gas Co., 10 Cir., 113 F.2d 308; Norwood Lumber Corp. v. McKean, 3 Cir., 153 F.2d 753; 5 Williston, Contracts (rev. ed.) § 1339A."

■ Since it is uncontroverted that the individual claimants suffered no actual monetary loss from the violation of the collective bargaining agreement, it is concluded that plaintiff's recovery is limited to nominal damages.

■ There remains one further question for determination. The Railway Labor Act provides that if the plaintiff finally prevails in an action to enforce an award, "he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit." 45 U.S.C. § 153, First(p). Neither the statute nor the reported cases afford any assistance in determining the amount of attorney's fee to be awarded. Generally, awards seem to have been based on the amount of the recovery. Since the plaintiff here only seeks three hours' pay for two employees, or a total of less than $14.00, and since it is unable to cite any authority whatever to justify the Court in awarding more than nominal damages, it is found that attorney's fee in the amount of $25.00 is fair, just, and reasonable.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and the subject matter.

2. The portion of the award finding that the defendant has violated its collective bargaining agreement "has been finally, completely, and irrevocably settled by the Adjustment Board's decision," and is not subject to review by the Court.

3. With respect to the money award, the plaintiff is entitled to recover of the defendant nominal damages only, which

the Court fixes to be $1.00 and the costs of the action.

4. The plaintiff is further entitled to recover of the defendant reasonable attorney's fee in the sum of $25.00, to be taxed as a part of the costs.

A judgment be entered accordingly.