**BROTHERHOOD OF RAILROAD SIGNALMEN OF AMERICA, Plaintiff,**

**v.**

**SOUTHERN RAILWAY COMPANY, a Corporation, Defendant.**

**No. C-9-G-65.**

United States District Court
M. D. North Carolina,
Greensboro Division.

May 25, 1966.

Charles T. Boyd, Greensboro, N. C., and Harold C. Heiss, Cleveland, Ohio, for plaintiff.

C. T. Leonard, Jr., Greensboro, N. C., for defendant.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW
AND OPINION

EDWIN M. STANLEY, Chief Judge.

This is an action to enforce Award No. 12300 of the National Railroad Adjustment Board, Third Division, dated March 2, 1964.   The Board determined that the defendant had violated its collective bargaining agreement with the plaintiff, and directed the defendant to compensate two of its employees at their respective straight time rates of

pay for all time worked by employees not of the signalmen craft in performing maintenance work on the defendant's car holder at Hayne Car Shop near Spartanburg, South Carolina.

The case was tried by the Court without a jury. After considering the pleadings, stipulations, and other evidence, including exhibits, and briefs and oral arguments of counsel, the Court makes and files herein its Findings of Fact and Conclusions of Law, separately stated:

## FINDINGS OF FACT

1. The plaintiff is an unincorporated labor organization, and is the representative under the Railway Labor Act of the class of signalmen, signal maintainers and signal helpers employed by the defendant.

2. The defendant is a corporation organized and existing under the laws of the Commonwealth of Virginia, and maintains its principal office in Washington, D. C. The defendant is engaged in the business of a common carrier by railroad, and operates in interstate commerce.

3. There was in effect in 1956, and thereafter, a collective bargaining agreement between the plaintiff and the defendant covering the rules, rates of pay, hours of service and working conditions of the signalmen craft.

4. During the year 1956, the defendant caused to be constructed at its Hayne Car Shop Yard near Spartanburg, South Carolina, certain electrically operated devices and equipment to hold cars. The installation was completed and the car holders put in use on October 18, 1956. The normal maintenance work required on the car holders has been performed by employees of the defendant other than those of the signal craft.

5. The plaintiff, on behalf of J. F. Shinta, Signal Maintainer, and W. K. Day Assistant Signal Maintainer, both of Spartanburg, South Carolina, filed claim with the defendant for compensation for Shinta and Day at their respective overtime rates of pay for all time worked by employees other than members of the signal craft on the subject car holders from October 18, 1956, until such time as the work was given to the signal craft. The defendant declined to pay the claim and the matter was submitted to the National Railroad Adjustment Board, Third Division, pursuant to Section 153, First (i) of the Railway Labor Act, 45 U.S.C. § 153, First(i).

6. The National Railroad Adjustment Board, Third Division, on March 2, 1964, made Award No. 12300, finding that the defendant had violated its collective bargaining agreement by having the maintenance work performed on subject car holders by employees not covered by the signalmen's agreement, and that Shinta and Day were entitled to receive compensation at their respective straight time rates of pay for all time worked by employees other than members of the signal craft on the car holders from October 18, 1956, until such work was given to the signal craft. The award specifically reduced the claim from "overtime" rates to "straight time" rates. An order was entered directing the defendant to comply with the award on or before May 16, 1964. The award contains no finding that any time was lost by either Shinta or Day, or any other member of the signal craft, by reason of the violation found to have occurred, and no basis was assigned for the amount of the award.

7. When the defendant declined to comply with the order of the National Railroad Adjustment Board, this suit was instituted to enforce the award.

8. On October 18, 1956, J. F. Shinta was signal maintainer assigned by the defendant to Spartanburg, South Carolina, and he remained at such assignment until June 6, 1960, when he retired on a disability annuity under the Railroad Retirement Act.

9. On October 18, 1956, W. K. Day was an assistant signal maintainer assigned by the defendant to Spartanburg, South Carolina, and he remained at such assignment until July 2, 1960, when he retired on a disability annuity under the Railroad Retirement Act.

10. J. F. Shinta and W. K. Day were the only two members of the signalmen craft assigned to Spartanburg, South Carolina, during the period in question.

11. The plaintiff has withdrawn its claims on behalf of J. F. Shinta and W. K. Day for the period of time from and after the date of their respective retirements.

12. The defendant kept no record of the maintenance work done on the car holder system at Spartanburg, South Carolina, but estimates that one man hour of such work was done each month.

13. The duties of signal maintainer assigned to a location such as Spartanburg are to maintain signals and equipment, including crossing signals, crossing protective devices, and other automatic signals, within their assigned territory. Such signal maintainers work from 7:30 a. m. to 4:30 p. m., with an hour for lunch, on a five-day a week basis. This was the situation in Spartanburg during the entire period in question.

14. Effective November 1, 1956, the hourly rate for an assistant signal maintainer was $2.158. To simplify calculations, the plaintiff stipulated and agreed to compute the amount alleged to be due the claimants on the basis of the lowest hourly rate paid to either claimant during the period from completion of installation of the car holders to the month of retirement of J. F. Shinta, beginning with November, 1956, and extending through May, 1960, a total of forty-three months at $2.158 per hour or a total of $92.79.

15. The signal maintainers of Spartanburg are responsible for all the signal equipment within their territory, and the addition of other signals to such territory would mean additional assignments that such signal maintainers would have to work into their regular schedules. Such additional assignment would not affect the number of hours the signal maintainers would work. Rather, it would be added to the schedule of assignments to be performed by said maintainers within their regular hours of work.

16. Signalmen occasionally work overtime when requested by the defendant railroad. Such overtime work is utilized in an emergency situation, and is discouraged by the defendant railroad.

17. The record contains no evidence of any loss of time, work or pay by either Shinta or Day by reason of the performance of the maintenance work on the car holders by employees of the defendant outside the signal craft, and there is no evidence of any pecuniary loss suffered by either Shinta or Day.

18. The collective bargaining agreement between the plaintiff and the defendant contains no provision for either liquidated or punitive damages for technical violations of the agreement.

## DISCUSSION

The award of the National Railroad Adjustment Board is twofold. The first part of the award relates to a finding that the defendant violated its collective bargaining agreement with the plaintiff by permitting employees not of the signal craft to perform maintenance work on its car holders at Hayne Car Shop near Spartanburg, South Carolina. The second part of the award consists of a money award granting pay to Shinta and Day for time spent maintaining the car holders by employees other than members of the signal craft. Section 3, First(m) of the Railway Labor Act, 45 U.S.C. § 153, First(m), provides that Adjustment Board awards "shall be final and binding upon both parties to the dispute, except insofar as they shall contain a money award." Thus, while the merits of the finding of the Adjustment Board with reference to a violation of the collective bargaining agreement must be accepted, the Court has the power to determine the validity and amount of the money award.

The province of the Court in actions to enforce awards by the National Railroad Adjustment Board is clearly defined in the recent case of Gunther v. San Diego

**572**

& A. E. R. Co., 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965), as follows:

"We hold that the District Court and the Court of Appeals as well went beyond their province in rejecting the Adjustment Board's interpretation of this railroad collective bargaining agreement. As hereafter pointed out Congress, in the Railway Labor Act, invested the Adjustment Board with the broad power to arbitrate grievances and plainly intended that interpretation of these controversial provisions should be submitted for the decision of railroad men, both workers and management, acting on the Adjustment Board with their long experience and accepted expertise in this field.

\* \* \* \* \* \*

"The award of the Board in this case, based on the central finding that petitioner was wrongfully removed from service is two-fold, consisting both of an order of reinstatement and the money award for lost earnings. Thus there arises the question of whether the District Court may open up the Board's finding on the merits that the railroad wrongfully removed petitioner from his job merely because one part of the Board's order contained a money award. *We hold it cannot.* This Court time and again has emphasized and re-emphasized that Congress intended minor grievances of railroad workers to be decided finally by the Railroad Adjustment Board."

"The Railway Labor Act as construed in the foregoing and other opinions of this Court does not allow a federal district court to review an Adjustment Board's determination of the merits of a grievance merely because a part of the Board's award, growing from its determination on the merits, is a money award. *The basic grievance here—that is, the complaint that petitioner has been wrongfully removed from active service as an engineer because of health—has been finally, completely, and irrevocably settled by the Adjustment Board's decision. Consequently, the merits of the wrongful*

*removal issue as decided by the Adjustment Board must be accepted by the District Court.*

*"Though the Board's finding on the merits of the wrongful discharge must be accepted by the District Court, it has power under the Act to determine the size of the money award.* The distinction between court review of the merits of a grievance and the size of the money award was drawn in Locomotive Engineers v. Louisville & Nashville R. Co., supra, 373 U.S. 33, at pp. 40–41, 83 S.Ct. 1059, pp. 1063, 1064, 10 L.Ed.2d 172, when it was said that the computation of a time-lost award is 'an issue wholly separable from the merits of the wrongful discharge issue.' On this separable issue the District Court may determine in this action how much time has been lost by reason of the wrongful removal of petitioner from active service, and any proper issues that can be raised with reference to the amount of money necessary to compensate for the time lost." (Emphasis supplied.)

Since the Adjustment Board has "finally, completely, and irrevocably" settled the grievance that the defendant violated its collective bargaining agreement with the plaintiff by permitting employees other than members of the signal craft to perform maintenance work on the car holders, there remains for consideration the validity and size of the money award. In determining this separable issue, the Court is to proceed "in all respects as other civil suits" where damages must be determined. 45 U.S.C. § 153, First(p); Gunther v. San Diego & A. E. R. Co., supra.

There was no evidence that the individual claimants suffered any reduction in earnings or loss of wages by reason of the violation of the collective bargaining agreement. Under these circumstances, to award the claimants additional pay would be imposing sanctions or penalties against the defendant. A breach of contract entitles the wronged party only to compensation for any in-

jury he may have suffered. He is not entitled to exact a penalty from the defendant when no injury occurred. Thus, if an employee is wrongfully discharged, he may recover what he would have received had there been no breach, reduced by what he earned or might have earned in other employment. The measure of damages for breach of contract is stated in United Protective Workers of America, Local No. 2, v. Ford Motor Co., 7 Cir., 223 F.2d 49 (1955), as follows:

"The dispute before us arose because the parties interpreted their contract differently, and the principles of law involved had not been clearly settled previously. There was no bad faith or misconduct on either side. Although Ford was subsequently found to have breached the contract, it is not a wrongdoer in the tort sense. There is no justification for an award with even the flavor of punitive damages. The only appropriate measure of damages is compensation."

The plaintiff has cited no case, and none has been found, which holds that individual claimants are entitled to anything more than compensation for the injury they suffered. Since they were employed by the defendant and received full pay for the entire period in question, to award anything more than nominal damages would amount to an imposition of a penalty against the defendant. There is no justification, in law or in equity, for such a penalty. "Collective bargaining agreements like other contracts are to be given a reasonable construction, not one which results in injustice and absurdity." Atlantic Coast Line R. Co. v. Brotherhood of Ry., Etc., 4 Cir., 210 F.2d 812 (1954).

The case of Brotherhood of Railroad Trainmen v. Denver & R. G. W. R. Co., 10 Cir., 338 F.2d 407 (1964), cert. den. 380 U.S. 972, 85 S.Ct. 1330, 1342, 14 L.Ed.2d 268 (1965), decided the identical question now before the Court. There, as here, the Brotherhood failed to establish any financial loss to any of the individual claimants from the violation, and the district court held that recovery was limited to nominal damages. The Court of Appeals, in affirming the trial court, held:

"Although the Board order awards to the individual appellants a full day's pay for each claim filed, both the findings and the order of the Board make no mention of the basis for the amount of the award. And since the parties have stipulated that the aggrieved employees have suffered no actual monetary loss or hardship from the contract violation, both the weight of the Board order as evidence of fact and the presumptive correctness of the Board order, Elgin, Joliet & Eastern Ry. Co. v. Burley, 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928, are completely dissipated. The District Court, then proceeding as in 'other civil suits,' limited the award to nominal damages and refused enforcement of the Board order to a greater extent.

"The collective bargaining agreement contains neither a provision for liquidated damages nor punitive provisions for technical violations. The Board has no specific power to employ sanctions and such power cannot be inferred as a corollary to the Railway Labor Act. See Priebe & Sons v. United States, 332 U.S. 407, 413, 68 S.Ct. 123, 92 L.Ed. 32. And if, as counsel for the Brotherhood contends, there exists within the industry a long established and accepted custom to pay what would amount to a windfall for contract violations such as here occurred, such custom was not established by finding, nor requested as a finding, in the procedures before either the Board or the District Court. We conclude that the District Court correctly determined that the instant case is governed by the general law of damages relating to contracts; that one injured by breach of an employment contract is limited to the amount he would have earned under the contract less such sums as he in fact earned. Atlantic Coast Line R. Co. v. Brotherhood of Ry. Clerks, 4 Cir., 210 F.2d 812, 815; United Protective

Workers of America, Local No. 2 v. Ford Motor Co., 7 Cir., 223 F.2d 49, 53–54, 48 A.L.R.2d 1285. Absent actual loss, recovery is properly limited to nominal damages. Oklahoma Natural Gas Corp. v. Municipal Gas Co., 10 Cir., 113 F.2d 308; Norwood Lumber Corp. v. McKean, 3 Cir., 153 F.2d 753; 5 Williston, Contracts (rev. ed.) § 1339A."

■ Since it is uncontroverted that the individual claimants suffered no actual monetary loss from the violation of the collective bargaining agreement, it is concluded that plaintiff's recovery is limited to nominal damages.

■ There remains one further question for determination. The Railway Labor Act provides that if the plaintiff finally prevails in an action to enforce an award, "he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit." 45 U.S.C. § 153, First(p). Neither the statute nor the reported cases afford any assistance in determining the amount of attorney's fee to be awarded. Generally, awards seem to have been based on the amount of the recovery. Since the plaintiff here only seeks the recovery of $92.79, and since it is unable to cite any authority whatever to justify the Court in awarding more than nominal damages, it is found that attorney's fee in the amount of $25.00 is fair, just, and reasonable.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and the subject matter.

2. The portion of the award finding that the defendant has violated its collective bargaining agreement "has been finally, completely, and irrevocably settled by the Adjustment Board's decision," and is not subject to review by the Court.

3. With respect to the money award, the plaintiff is entitled to recover of the defendant nominal damages only, which the Court fixes to be $1.00 and the costs of the action.

4. The plaintiff is further entitled to recover of the defendant reasonable attorney's fee in the sum of $25.00, to be taxed as a part of the costs.

A judgment will be entered accordingly.