**BROTHERHOOD OF RAILROAD TRAINMEN, Plaintiff,**

v.

**CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD CO. (LINES EAST), Defendant.**

No. 62–C–210.

United States District Court E. D. Wisconsin.

Aug. 17, 1966.

David Leo Uelmen, of Goldberg, Previant & Uelmen, Milwaukee, Wis., for plaintiff.

Rodger S. Trump and Richard R. Robinson, of Bender, Trump, Davidson & Godfrey, Milwaukee, Wis., for defendant.

## OPINION AND ORDER

GRUBB, District Judge.

This is an action under Section 153, First (p), Title 45 U.S.C.A., for enforcement of an award and order of the National Railroad Adjustment Board. Plaintiff, Brotherhood of Railroad Trainmen, is a "representative of employees," and defendant, Chicago, Milwaukee, St. Paul and Pacific Railroad Co. (hereinafter called the "Carrier"), is a "carrier," under the provisions of the Railway Labor Act, Title 45 U.S.C.A. § 151, Sixth and First, respectively. The parties agreed to submission of the case on the record, including the pleadings, depositions, affidavits, and post trial briefs.

The underlying controversy involves the assignment of "bleeding" cars which consists of pulling a rod on each railroad car standing in the yard to let the air out of the air brakes, thereby making the cars ready to switch. Prior to May 12, 1952, the work of bleeding was performed by yardmen, known as coupler-bleeders, represented by plaintiff. Because of changes in the nature of Carrier's operations in May 1952, coupler-bleeders were no longer necessary and the Carrier assigned the remaining work of bleeding to carmen represented by the Brotherhood of Railway Carmen.

Several employees represented by plaintiff thereafter filed time claims, starting with May 13, 1952, when the regularly assigned coupler-bleeder yardmen were eliminated and the work of bleeding was reassigned to the carmen. In September 1953, after discussion of the claims in conference between plaintiff and Carrier, the parties agreed to submission of the question to the First Division of the National Railroad Adjustment Board. Referee Paul D. Hanlon, to whom the dispute was assigned, issued an award sustaining plaintiff's claim on November 3, 1961. An order pursuant to the award was issued by the National Railroad Adjustment Board, First Division, on the same date.

Following the rule applied in a closely similar case involving the same parties, the Referee determined that when the work content in the jobs performed by a certain craft fell off, Carrier was free to abolish those jobs—in the instant case, those of the coupler-bleeder yardmen. If, however, certain work had been "uniquely preserved" for these employees, that is the employees within the group had exclusively performed the work in question prior to the time the Carrier reassigned the job, then any remaining portion of this work would still have to be handled by men within the seniority group of that craft and could not be reassigned.

This rule presented the factual question whether or not prior to the date of reassignment of the work to the carmen, the yardmen had exclusively performed the job of bleeding air from the cars. Plaintiff offered evidence on this question; the Carrier submitted a brief general allegation that others than employees represented by plaintiff had performed the service. The Referee found that Carrier had failed to sustain its burden of proof on this disputed issue and concluded that prior to May 12, 1952, the job of bleeding cars at the Air Line Yard had been exclusively assigned to and handled by yardmen. The Referee further noted that:

" * * * The portion of the job which remained after the coupling portion was eliminated should still have been assigned to yardmen even though the number of yardmen required may have been substantially reduced by the elimination of the coupling and uncoupling functions."

The order of the Board pursuant to the Referee's award directs the Carrier to "make effective the award" and "if the award includes a requirement for the payment of money, to pay the employe (or employes) the sum to which he is (or they are) entitled on or before December 3, 1961." The Carrier has complied with the direction to pay the claims, but has not reassigned the work of bleeding cars to the yardmen represented by plaintiff.

Thereafter, on April 3, 1962, the Carrier filed a claim with the First Division of the National Railroad Adjustment Board to the effect that the yardmen represented by plaintiff never had the exclusive right to bleed air from the cars. Plaintiff answered the claim on or about September 3, 1962, and requested the Board to direct the Carrier to restore the yardmen-bleeder assignments and to compensate these employees for lost wages due to improper assignments. This claim is now pending before the Board.

In this suit for enforcement of the award and order of November 3, 1961, the Carrier contends that there has been full compliance with the direction of the award and order by payment of claims. Further, it is submitted that the subject matter of this suit, that is, the question of whether yardmen have the exclusive right to bleed air from cars, is now pending before the Board by virtue of the Carrier's April 3, 1962 submission, leaving this court without jurisdiction over the subject matter of the suit since exclusive jurisdiction over the dispute is in the Board. The Carrier does not challenge the validity of the November 3, 1961 award but maintains that it is to be interpreted as limited to the direction of payment of monetary claims for lost wages up to December 3, 1961, and that it is not binding as to work assignments subsequent to the date of its rendition and required compliance.

The Carrier construes the award and order too narrowly. The direction to pay the monetary claims rests on the determination that the yardmen coupler-bleeders were entitled to the assignment of bleeding air from cars after abolition of the coupling work. This determination was based on proof of the state of facts existing prior to reassignment of the work by the Carrier and does not rest on events subsequent to May 12, 1952, or occurring after the date of the award and order. In this action, the Carrier has not indicated that any change in the situation since the date of the award and order would require a different conclusion under the rule applied by the Referee. Implementation of the award as required by the order of the Board necessarily calls for assignment of the bleeding job to employees represented by plaintiff in addition to the payment of monetary claims.

The subsequently filed claim of the Carrier appears to ask for a redetermination of the issue previously decided. It presents the identical factual issue of the earlier proceeding. The evidence offered by the Carrier on this new claim—statements by employees and representatives of the Carrier as to the practice of assignment of bleeding cars prior

252

to May 13, 1952—is that which the Carrier might have, but did not offer in the earlier proceeding. Resubmission of the identical factual issue by the losing party before the Board does not defeat the right of the prevailing party to enforcement of an otherwise unchallenged award and order, which is conclusive on the parties, and not subject to review by this court. See Gunther v. San Diego & Arizona Eastern Railway Co., 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965). Nor does the Carrier's request for redetermination of the factual issue by the Board defeat this court's jurisdiction to order enforcement of the earlier award. To hold otherwise would deny the finality to be accorded to Board determinations and add delay to the enforcement of the prevailing party's rights. The foregoing opinion sets forth the court's findings of fact and conclusions of law in accordance with Rule 52, Federal Rules of Civil Procedure.

It is the order of the court that the Carrier comply with the order of the Board by reassignment of the remaining work of bleeding cars to the yardmen represented by plaintiff. The parties are directed to attempt to agree as to the amounts of lost wages due the employees represented by plaintiff resulting from failure to reassign since December 3, 1961, the date of compliance of the Board's order, submitting the stipulation for approval of the court. If the parties are unable to agree as to the employees entitled to wages and the amounts due said employees, within 60 days from date of this decision, either party may move for the appointment of a Special Master under Rule 53, Federal Rules of Civil Procedure.

In view of the pendency of the Carrier's claim before the Board, this order of the court is made subject to any future award and order entered by the Board.

The clerk is hereby directed to enter judgment accordingly for the plaintiff, Brotherhood of Railroad Trainmen, together with its costs, and against the defendant, Chicago, Milwaukee, St. Paul and Pacific Railroad Co.