### TRANSPORTATION–COMMUNICATION EMPLOYEES UNION

v.

### HARRIMAN AND NORTHEASTERN RAILROAD COMPANY.

### Civ. A. No. 5666.

United States District Court
E. D. Tennessee, N. D.

March 30, 1967.

Milton Kramer, Schoene & Kramer, Washington, D. C., Hugh A. Tapp, Knoxville, Tenn., for plaintiff.

Clyde W. Key, Knoxville, Tenn., James I. Hardy, Washington, D. C., Robert L. Crossley, Knoxville, Tenn., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, Chief Judge.

On June 22, 1966 complaint was filed in this case by the Transportation-Communication Employees Union (the Union) against Harriman and Northeastern Railroad Company (the Railroad) for enforcement of an Award and Order of the National Railroad Adjustment Board, Third Division (the NRAB) pursuant to 45 U.S.C. § 153, First (p).

Subsequently, on January 31, 1967, and after the answer was filed by defendant on August 11, 1966 and the Pre-Trial hearing held on January 3, 1967—the Union filed a motion "for judgment on the pleadings in its favor, enforcing Award No. 12478 of the National Railroad Adjustment Board, Third Division."

The facts are briefly that Mrs. I. M. Hobbs, a member of the Union and agent telephoner for the Railroad at the Petros Station, lost her job through abolition of the position by the Railroad at that station and transfer of her functions to another carrier, the Southern Railway, at Harriman. The Union filed a claim against the Railroad for violation

of the collective bargaining agreement, sought correction of the violation and recompense for the employee's loss of earnings suffered by reason of the violation. The matter went through the grievance procedures provided by the Agreement but no settlement was achieved and the Union filed a claim with the NRAB. The NRAB issued an order on April 30, 1964 sustaining the claim and making an award effective July 1, 1964. The defendant Railroad failed and refused to comply with the order. The NRAB did not specify the amount of the award but, rather, directed: "The Carrier shall compensate Mrs. Hobbs at the rate of the discontinued position for each day the work of her position is performed by others not covered by the agreement." Hence the complaint asking enforcement of the Award and Order.

As noted, the complaint was filed on June 22, 1966. Two days prior thereto on June 20, 1966 the President approved an amendment to Sect. 153 First (p) of Title 45. The amendment presents a question as to the scope of the review powers of the Court with respect to enforcing or setting aside an order of a division of the Adjustment Board.

Prior to June 20, 1966, pertinent portions of Sect. 153, First (p) read as follows:

"(p) If a carrier does not comply with an order of a division of the Adjustment Board * * *, the petitioner, * * * may file in the District Court of the United States, * * * a petition setting forth briefly the causes for which he claims relief, and the order of the division of the Adjustment Board in the premises. Such suit in the District Court of the United States shall proceed in all respects as other civil suits, except that on the trial of such suit the findings and order of the division of the Adjustment Board shall be prima facie evidence of the facts therein stated, * * * If the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collect-

ed as a part of the costs of the suit. The district courts are empowered, under the rules of the court governing actions at law, to make such order and enter such judgment, by writ of mandamus or otherwise, as may be appropriate to enforce or set aside the order of the division of the Adjustment Board."

Pertinent portions of Sect. 153(p) after the Amendment of June 20, 1966 read as follows:

"(p) If a carrier does not comply with an order of a division of the Adjustment Board * * * the petitioner, * * * may file in the District Court of the United States * * * a petition setting forth briefly the causes for which he claims relief, and the order of the division of the Adjustment Board in the premises. Such suit in the District Court of the United States shall proceed in all respects as other civil suits, except that on the trial of such suit the findings and order of the division of the Adjustment Board shall be conclusive on the parties * * *. If the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit. The district courts are empowered, under the rules of the court governing actions at law, to make such order and enter such judgment, by writ of mandamus or otherwise, as may be appropriate to enforce or set aside the order of the division of the Adjustment Board: *Provided, however,* That such order may not be set aside except for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order."

It will be noted that there were two important changes in the Section. The clause providing that the findings and order of the Adjustment Board "shall be prima facie evidence of the facts therein

stated" was changed to read that such findings and award "shall be conclusive on the parties" with the proviso at the end, "That such order may not be set aside except for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order."

Thus it can be seen that the authority of the Court to deal with the findings and order was sharply curtailed by the amendment. From being "prima facie evidence of the facts" they were made "conclusive on the parties," subject to the provisos set forth above.

Further, the 1966 amendment removed from Sect. 153, First (o) the exception as to money awards. All findings of the NRAB are now conclusive, subject to the provisos.

Even prior to the amendment of June 20, 1966, the Supreme Court of the United States in Gunther v. San Diego & Arizona Eastern Railway Co., 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308 had ruled that even though there was a money award, " * * * The basic grievance * * * that is, the complaint that petitioner has been wrongfully removed from active service as an engineer because of health—has been finally, completely and irrevocably settled by the Adjustment Board's decision. Consequently, the merits of the wrongful removal issue as decided by the Adjustment Board must be accepted by the District Court." Although the Supreme Court was specifically deciding in Gunther that the presence of a money award in the case did not open up the "basic grievance" it went much further than any court had theretofore gone in endowing with finality the findings of the Adjustment Board on the basic grievance.

Even if the amendment of June 20, 1966 does not apply to the grievance before this Court—a contention asserted by defendant on the theory that the amendment could not apply retroactively to a proceeding already initiated before the Adjustment Board—this Court would,

under the Gunther decision, have to enforce the Board's ruling except for extreme derelictions not appearing here and not called to its attention. See Hodges v. Atlantic Coast Line Railroad Company, 363 F.2d 534 (C.A.5) which held, " * * * Gunther necessarily precludes our determination of the disability issue raised by the Railroad * * *. To the extent that our decisions * * * (and numerous cases from other Circuits and District Courts) hold that the District Court can review a non-monetary award of the NRAB, they have been superseded by Gunther."

But the Court disagrees with defendant's contention that the amendment does not apply to this proceeding. It has examined the purposes of the Amendment as considered in 2 United States Congressional and Administrative News, 1966, page 2285 et seq. It appears that the principal purpose of the bill was to eliminate the large backlog of undecided cases before the NRAB and to expedite disposition of grievances and disputes over the interpretation and application of agreements. In this connection, it was noted that railroad employees with grievances sometimes had to wait as much as ten years for decision on a claim and thereafter either had to forego the award or go to court and try the case again.

The temper of the Congress is clear and from this background material it is clear that Congress was disposed to expedite enforcement. In the amending act, there was no provision preserving the reviewing procedures in preceding cases. Bruner v. United States, 343 U.S. 112, 116, 72 S.Ct. 581, 96 L.Ed. 786. Although the District Court's jurisdiction was not abolished by the amendment of June 20, 1966, its procedural authority to review was substantially altered thereby.

We have mentioned the abolition of the differentiation as to the review authority between the basic grievance and the money award in subsection (o). We have also noted that the amendment to subsection (p) enhanced the findings of the Board from "prima facie" to "conclusive" status, and correspondingly re-

duced the Court's powers on a petition for review.

Finally, the amendment of June 20, 1966 added a new subsection (q), the portion therof pertinent here being:

" * * * The court shall have jurisdiction to affirm the order of the division, or to set it aside, in whole or in part, or it may remand the proceeding to the division for such further action as it may direct. *On such review, the findings and order of the division shall be conclusive on the parties,* except that the order of the division may be set aside, in whole or in part, or remanded to the division, for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order. * * " (Emphasis added.)

Again we note the conclusiveness accorded the Board's findings and order.

The matter of the effect to be accorded the amendments in pending cases came up in Brotherhood of Railroad Trainmen et al. v. Denver and Rio Grande Western Railroad Co., 370 F.2d 833, 835 (C.A. 10, 1966.) In that case the Board had made its findings, the District Court had entered a judgment drastically reducing the amount of the Board's award and the case was pending in the Court of Appeals before the amendment was passed. The Court said in part:

" * * * this action was pending before us on June 20, 1966, the effective date of Public Law 89–456. It is very clear that the judgment of the district court regardless of its correctness when entered, must now be given appellate consideration in view of the amendments to the controlling statutes. Carpenter v. Wabash Ry., 309 U.S. 23, 26, 27, 60 S.Ct. 416, 84 L.Ed. 558. See also Hines v. Davidowitz, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581; American Foundries v. Tri-City Central Trades Council, 257 U.S. 184, 42 S.Ct. 72, 66 L.Ed. 189. And it has specifically been held that the repeal of a law conferring jurisdiction, absent a savings clause for pending cases, destroys jurisdiction in pending cases. Bruner v. United States, 343 U.S. 112, 72 S.Ct. 581, 96 L.Ed. 786. Our case falls squarely within the compulsion of those rules, for with the repeal of the district court's jurisdiction to review money awards the jurisdictional foundation for its judgment as to the amount of the award no longer exists. The judgment in such respect must be set aside, * * * "

■ The posture of our case is much stronger in that at the time the amendment was approved, the arbitration proceedings had been concluded but nothing had been done to invoke enforcement by the District Court. The complaint was filed two days subsequently to the approval of the amendment. At the time the complaint asking enforcement was filed, the only statute in effect was the amendment making the findings and order of the Board "conclusive on the parties." The Court is of the opinion that it is bound by the amendments, quite apart from the retroactivity of the Act.

■ In any event, the Court is bound, under the *Gunther* holding, by the Board's decision on the basic grievance. And on review it finds no ground for disturbing the award.