**UNITED TRANSPORTATION UNION,**
14600 Detroit Avenue, Lakewood,
Ohio 44107, Plaintiff

v.

**BURLINGTON NORTHERN RAILROAD COMPANY,** 3800 Continental Plaza, 777 Main Street, Fort Worth, Texas 76102, Defendant.

No. 94 C 6815.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 22, 1994.

Laurence Calnan Acker and Robert Earl Harrington, Jr., Harrington, Thompson, Acker & Harrington, Ltd., Chicago, IL, and Clinton J. Miller, III, Detroit, MI, for plaintiff.

Kenneth John Wysoglad, Michael J. Sazdanoff, Kenneth J. Wysoglad & Associates, Chicago, IL, and Thomas J. Knapp and Lawrence M. Stroik, Ft. Worth, TX, for defendant.

### MEMORANDUM AND ORDER

MANNING, District Judge.

This matter is before the court on the motion of plaintiff United Transportation Union ("UTU"), seeking status quo injunctive relief against defendant, Burlington Northern Railroad Company ("BN"). For the reasons stated below, this court denies the motion.

### BACKGROUND

UTU asks this court to temporarily restrain BN from hiring locomotive engineers from outside the company. It contends that BN has embarked on a nationally advertised campaign of soliciting outside locomotive engineer applicants rather than securing engineers from the internal ranks of trainmen at BN as provided for in the collective bargaining agreement between the parties. UTU further complains that BN's offer to provide monetary perks such as bonuses, househunting and moving expenses to the applicants is violative of Section 2 Fourth and Ninth of the Railway Labor Act (45 U.S.C. 152 Fourth and Ninth) as unlawful direct dealing with employees, for which there is no adequate remedy at law.

UTU argues that BN, by its action, is attempting to modify an existing collective bargaining agreement, and hence the dispute at issue is a major one. It further argues that where a railroad dispute between an employer and union is found to be major, that is, the alleged violator is attempting to acquire future rights, the aggrieved party is entitled to injunctive relief from the district court, pending arbitration, in order to maintain the status quo, without the necessity of a finding of irreparable harm.

UTU asserts, alternatively, that even if the court "erroneously" finds that the dispute is a minor one, it is still entitled to injunctive relief. It reasons that allowing the company to hire the locomotive engineers would irreparably harm the union, and an arbitrator would be unable to undo the harm which would result from the hiring.

BN responds by contending that the dispute at issue is minor, and consequently, pursuant to the Railway Labor Act (45 U.S.C. 153(i)), the district court is without jurisdiction to impose injunctive relief. It points to Sections 3 and 4(4) of the collective bargaining agreement as support for its position that the instant dispute entails an interpretation of its obligations thereunder. While it concedes the use of outside sources, it asserts that its intention and desire was to resolve or to help alleviate its severe shortage of locomotive engineers. According to BN, UTU's admission in its verified complaint that the agreements are relevant and controlling is further proof that this is a minor dispute.

The facts giving rise to this action briefly stated are as follows. In October of 1994, BN placed advertisements in newspapers across the country, including U.S.A. Today, indicating that the company was currently hiring experienced federally certified locomotive engineers. The ad offered the locations where openings existed and offered a number of benefits, including bonuses and relocation expenses for successful candidates. On November 15, 1994, the instant action was filed seeking injunctive relief.

### DISCUSSION

■ The primary issue in this case is whether the action by BN to advertise and hire 49 trainees who will become engineers constitutes a major or a minor dispute for the purposes of the Railway Labor Act (RAL). The distinction between major and minor disputes is essential because it determines the procedures the parties must follow to resolve their disputes. (*Railway Labor*

*Executives Association, et al. v. Norfolk and Western Railway Company* (7th Cir.1987), 833 F.2d 700, 704.) A minor dispute is a dispute "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions. (*Chicago & North Western v. Railway Labor Executives' Association* (7th Cir.1990), 908 F.2d 144.) In other words, a minor dispute is one over the interpretation or application of the collective bargaining agreement (for a grievance is merely a complaint that arises under the agreement), while a major dispute is one in which a party wants to change the agreement. (*Chicago & North Western v. Railway Labor Executives' Association* (7th Cir.1990), 908 F.2d 144, 148.) Congress intended minor grievances of railroad workers to be decided finally by the National Railroad Adjustment Board or a special adjustment board. *Gunther v. San Diego & A.E. Ry. Co.* (1965), 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308.

■ Because major disputes concern the creation of contractual rights, not enforcement of established rights, and pose the greatest threat to the goals of the RLA, *viz.*, interruptions to commerce and labor strife, such disputes are designed to be settled by the parties themselves through negotiation and mediation under the auspices of the National Mediation Board. (*Burlington Northern R. Co. v. United Transp. Union* (7th Cir.1988), 862 F.2d 1266, 1272.) The district courts have subject matter jurisdiction to enjoin a violation of the status quo pending completion of the required procedure, without the customary showing of irreparable injury. *Consol. Rail Corp. v. Railway Labor Executives' Association* (1989), 491 U.S. 299, 303, 109 S.Ct. 2477, 2480–81, 105 L.Ed.2d 250.

Both parties appear to agree that Sections 3 and 4(4) of the agreement between BN and UTU are pertinent to consideration of the issue before the court. Section 3 of the agreement between Burlington Northern Railroad Company (BN) and United Transportation Union (UTU) provides, in pertinent part:

"(1) Subject to the carrier's legal obligations, when selecting new applicants for engine service, opportunity shall first be given to employees in train and yard service on the basis of their relative seniority standing, fitness and other qualifications being equal. Transfer of engineers from one seniority district to another on the same railroad system will not be violative of this provision.

(2) Any person who is selected for engine service and does not have seniority as trainman will acquire seniority as trainman upon entering engine service, subject to paragraph (3) hereof.

(3) An employee who has established seniority as conductor (foreman), trainman (brakeman-yardman), hostler or hostler helper (but without seniority as a locomotive fireman) who is selected for engine service shall retain his seniority standing and all other rights in train and/or yard or hostling service. However, such employee shall be permitted to exercise such rights only in the event he or she is unable to hold any position or assignment in engine service, hostler or hostler helper."

Section 4(4) of the agreement between BN and UTU provides, in pertinent part:

"If the carrier's needs for engine service employees are not met during a period when there are not sufficient trainmen (including promoted conductors) in service with a seniority date on or after November 1, 1985 who must accept promotion to engine service or forfeit seniority in train service, the carrier may hire qualified engineers or train others for engine service."

[4] Having considered both parties' written submissions as well as oral argument, the court has determined that the dispute at issue is a minor dispute and this court is without jurisdiction to impose injunctive relief.

The dispute concerns interpretation of the contractual rights under the collective bargaining agreement, specifically Sections 3 and 4(4) regarding the hiring of locomotive engineers and promotion of employees with established seniority as conductors, and trainmen hostlers or hostler helpers. In other words this dispute concerns enforcement

of established contractual rights, not creation of future rights.

Issuance of an injunction would not serve the public interest because it would cause interruptions to interstate commerce. According to the undisputed affidavit of George A. LaValley, General Manager–Crew Management for BN, the demand for BN transportation services has been hindered by the almost continuous and severe shortages of both engineers and trainmen in numerous places throughout BN's 25 state, 26,000 mile system, but particularly in critical areas such as coal territory in the Powder River Basin, Wyoming. In the late 1993, the number of coal trains (100–110 cars) sets handled by BN increased from 140 to 240. General economy and overall traffic levels were increased. According to BN, these factors created serious capacity issues for the company, a good part of which resulted from severe crew shortages. BN avers that frequently trains literally wait until the next available crew is rested and available for service. The severe crew shortage adversely impacts on interstate commerce.

█ Furthermore, plaintiff has failed to establish that this is a major dispute for the purpose of the RLA, thereby entitling it to injunctive relief. Where an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective bargaining agreement. (*Consol. Rail Corp. v. Railway Labor Executives' Association* (1989), 491 U.S. 299, 307, 109 S.Ct. 2477, 2482–83, 105 L.Ed.2d 250.) In the instant case, it is arguably justified, based on Section 4(4) of the agreement, that since there were not sufficient trainmen during the period in question that BN could hire qualified engineers or train others for engine service.

*CONCLUSION*

For the reasons discussed above, this court denies the motion for a temporary restraining order.