**F. J. GUNTHER, Appellant,**

v.

**SAN DIEGO & ARIZONA EASTERN RAILWAY COMPANY, a corporation, Appellee.**

**No. 18724.**

United States Court of Appeals Ninth Circuit.

Sept. 4, 1964.

---

**544**

See also 198 F.Supp. 402; 192 F. Supp. 882.

Charles W. Decker, San Francisco, Cal., Harold N. McLaughlin, John H. Ritter, Marshman, Hornbeck, Hollington, Steadman & McLaughlin, Cleveland, Ohio, for appellant.

W. A. Gregory, William R. Denton, Frederick L. Nelson, San Francisco, Cal., James W. Archer, Eugene L. Freeland, Gray, Cary, Ames & Frye, San Diego, Cal., for appellee.

Before POPE, HAMLEY and MERRILL, Circuit Judges.

MERRILL, Circuit Judge.

Appellant initiated this proceeding on November 28, 1960, by filing in the District Court for the Southern District of California a petition under 45 U.S.C. § 153(p),[1] seeking enforcement of an award and order of the First Division of the National Railroad Adjustment Board. That award and order directed that appellant be reinstated by the Railroad to

[1] "If a carrier does not comply with an order of a division of the Adjustment Board within the time limit in such order, the petitioner * * * may file in the District Court * * * a petition setting forth briefly the causes for which he claims relief, and the order of the division of the Adjustment Board in the premises. Such suit in the District Court of the United States shall proceed in all respects as other civil suits, except that on the trial of such suit the findings and order of the division of the Adjustment Board shall be prima facie evidence of the facts therein stated, * * *. The District Courts are empowered, under the rules of the court governing actions at law, to make such order and enter such judgment, by writ of mandamus or otherwise, as may be appropriate to enforce or set aside the order of the division of the Adjustment Board." (45 U.S.C. § 153(p) (1958).)

active employment, with pay for lost time. The Railroad successfully contended before the District Court that the award and order was made in excess of the jurisdiction of the Adjustment Board, and was therefore not subject to a judicial order of enforcement. Summary judgment was rendered in favor of the Railroad. Appellant subsequently moved, under F.R.Civ.P. Rule 60(b), to be relieved of judgment on the ground of newly discovered evidence. This motion was denied by the court. Appeals from both the judgment and subsequent order were taken and have been consolidated.

On December 30, 1954, shortly after appellant's seventy-first birthday, the Railroad removed him from active service. He had been employed by the Railroad since December, 1916, and his employment since December, 1923, had been as locomotive engineer.

The record establishes without dispute [2] that appellant's removal was under the following circumstances:

"Locomotive engineers employed by the San Diego & Arizona Eastern Railway Company are and have always been required to take and pass periodic physical examinations and reexaminations to determine their fitness to remain in service. In the year 1954 these requirements provided, and they still provide, that employees of age seventy and over must take and pass such a physical examination every three months. In accordance with the foregoing rule, Mr. Gunther reported for physical examination on November 24, 1953, and for additional examinations (reexaminations) in each successive three-month period to and including December 15, 1954. On the latter date Mr. Gunther reported for and took his physical examination; and on the basis of the findings during this examination the examining physicians determined that he was no longer physically qualified to remain in service as a locomotive engineer. These findings were reviewed at the Southern Pacific Hospital in San Francisco by the Chief Surgeon, who concurred in the findings and opinion that Mr. Gunther's heart was in such condition that he would be likely to suffer an acute coronary episode. Based upon this conclusion, Mr. Gunther was physically disqualified, as aforesaid, on December 30, 1954."

Following removal, appellant submitted to an examination by a physician of his own choice, and on the basis of that doctor's favorable report requested of the Railroad that a three-doctor board be appointed to reexamine his physical qualifications for return to service. When this request was denied appellant filed with the Railroad Adjustment Board a claim for reinstatement and back pay. The claim was presented on appellant's behalf by the Brotherhood of Locomotive Firemen and Enginemen, of which organization appellant was a member and officer. The designated collective bargaining representative of the Railroad's employees, however, was the Brotherhood of Locomotive Engineers and it was the contract reached between that organization and the Railroad which constituted the applicable collective bargaining agreement.

Before the Adjustment Board appellant's claim was opposed by the Railroad on the ground that there was no rule providing for the appointment of a neutral medical board and that the Railroad's judgment of appellant's fitness, based upon the decision of its Chief Surgeon, was not subject to review.

The Board nevertheless ordered a neutral board to be established. Its order of October 2, 1956, provided:

"It is true that carrier has the right and responsibility of determining within proper limits the physical fitness of employes to remain in service. It is true also that the employe has the right to priority in service according to his seniority and pur-

2. By affidavit of appellee's personnel manager.

suant to the agreement so long as he is physically qualified. Where these two rights come into collision it has consistently been held by this Division that it has jurisdiction to determine whether the employe has wrongfully been deprived of service. If carrier through its medical staff has removed an employe from service in good faith, on the basis of a fair standard of fitness, applied to his physical condition, adequately determined, there is no right to reinstatement. Otherwise he has been wrongfully removed from service.

"Since determination of the facts necessary to enable the Division to make proper award on such issue requires expert medical competence, it has not been unusual, where adequate showing has been made of ground for challenge of carrier's decision, for the Division to provide for a neutral board of three qualified physicians, one chosen by carrier and one by the employe and the third by the two so selected, for the purpose of determining the facts as to a claimant's disability and the propriety of his removal from service. In such case the Division predicates its award upon the finding of the board of physicians.

"While the statement of claimant's physician now submitted is generally equivocal we think that when considered in connection with his prior report and that of carrier's medical superintendent, it discloses sufficient substantial disagreement as to claimant's physical condition to justify further check up and inquiry by such a neutral board of physicians. If the decision of the majority of such board shall support the decision of carrier's chief surgeon, the claim will be denied; if not, it will be sustained with pay pursuant to rule on the property from October 15, 1955, the date of the letter of Dr. Hall showing disagreement with the findings of disqualification by the company physicians."

Appellant was duly examined by the neutral board and the Adjustment Board subsequently found "that the majority of said board properly examined claimant and that their findings and decision therefrom did not support the decision of carrier's chief surgeon but that they found and decided that claimant had no physical defects which would prevent him from carrying on his usual occupation as engineer." The claim of appellant was sustained with pay for all time lost from October 15, 1955. It is for enforcement of this award and order that this proceeding was instituted.

The function of the Railroad Adjustment Board is set forth as follows in 48 Stat. 1189 (1934), 45 U.S.C. § 153(i) (1958):

"The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on June 21, 1934, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes."

The First Division of the Board, by § 153(h), is given authority over disputes involving engineers.

■ The issue here is whether any dispute growing out of a grievance or question of contract interpretation is presented by appellant's removal from active service upon the ground of physical disqualification. We agree with the District Court that no such dispute is presented.

It is clear from the record that the Railroad has always reserved to itself

the right and responsibility of determining the qualifications of its employees, including, importantly, the physical fitness of its locomotive engineers. It would seem to us to be a most elementary proposition that in the public interest the responsibility for such determinations must be clearly fixed, and that in the absence of contrary provisions in the applicable collective bargaining agreement such responsibility must rest with the Railroad.[3]

There was no contrary provision in the contract between the Railroad and the Brotherhood of Locomotive Engineers as of the date of appellant's removal.

Appellant refers us to the contract's general provisions respecting seniority rights and right to continue active employment in the absence of good cause for discontinuance thereof.[4] It is clear from a reading of these provisions that they deal with discharge for cause, which is not to be confused with physical disqualification.

In our judgment, the Board exceeded its jurisdiction. It dealt with a dispute entirely foreign to the collective bargaining contract or to any question of interpretation arising under it.

Appellant contends that the determination of this dispute by the Adjustment Board and its decision to entertain the dispute should be accepted by this Court under the arbitration-encouraging rules laid down in United Steel Workers of America v. Warrior & Gulf. Nav. Co. (1960) 363 U.S. 574, 80 S.Ct. 1347, 4 L. Ed.2d 1409; United Steel Workers of America v. American Mfg. Co. (1960) 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403, and decisions of like import.

We do not find that line of authority in point. Those cases arose under § 301 of the Labor Management Relations Act, 61 Stat. 156 (1947), 29 U.S.C. §

3. While it may well be that an arbitrary exercise of its rights and responsibilities by the Railroad could form the basis of a grievance, the Board's own order, as we have heretofore quoted it, states that reinstatement should be limited to such cases. If, states the Board, there is a lack of good faith in the removal or lack of a fair standard of fitness or adequate determination, the claimant has been wrongfully removed. Otherwise, states the Board, there is no right to reinstatement.

Nowhere in the record do we find any suggestion of a lack of good faith on the part of the Railroad, or that absence of the likelihood that an acute coronary episode might be suffered is not a fair standard of fitness for a locomotive engineer; or that the determination of the Railroad surgeons was not "adequate" (which we would suppose to relate to the qualifications of the medical examiners and the sufficiency of their examination). The record simply shows that a "majority" of the neutral board disagreed.

4. "Article 35—Seniority
"Section 1
"Rights of engineers shall be governed by seniority in service of the Company as engineers and seniority of the engineer as herein defined shall date from first service as an engineer.

"Section 3(b)
"Where there is a surplus of engineers for the business of the district, the oldest engineer in point of seniority shall have the preference for employment." (Gunther affidavit filed May 29, 1961. R. 100.)
"Article 47—Investigations
"Section 1(b)
"No engineer shall be suspended or discharged, except in serious cases, where a fault is apparent beyond reasonable doubt, until he has had a fair and impartial hearing before the proper officials.
"Section 1(e)
"If an engineer is suspended or discharged and is proven to have been innocent of the offense charged, he shall be reinstated and paid rate as set forth in Appendix 'B' for time lost on such account.
"Article 38—Reduction of force
"Section 1(a)
"When, from any cause, it becomes necessary to reduce the number of engineers on the engineers' working list, those taken off may, if they so elect, displace any fireman their junior under the following conditions:
"Second: That when reductions are made they shall be in reverse order of seniority." (Gunther affidavit filed May 29, 1961. R. 100.)

548

185 (1958), and dealt with arbitration provisions of collective bargaining agreements. In those cases the parties were required to resolve their disputes as to the contract's meaning by a method upon which they had themselves agreed. Here the parties have not agreed to arbitration. Resolution of their disputes by the Adjustment Board is imposed by statute and the basic issue is not as to the meaning of what the parties have said but the meaning of what Congress has stated. Congress has (see footnote 1) provided for judicial review of the Board's decision and that the Board's findings and order shall be "prima facie evidence of the facts." The reviewing court is authorized to enter such judgment "as may be appropriate to enforce or set aside the order * * *." It would seem apparent that Congress intended that the courts should have full power to review the question whether a dispute as defined by Congress (rather than by the parties themselves) exists.

Appellant asserts that in any event summary judgment was a premature and precipitate disposition of the case upon the merits, and that issues of fact were presented or suggested by the record. In this connection it contends that the record on motion for summary judgment did not show that the collective bargaining agreement before the court was the complete agreement, but on the contrary showed that it had been amended in some respects, thus suggesting that it might have been amended in others as well; that with respect to the extent of appellant's rights the agreement was vague and uncertain, and that these uncertainties remained to be resolved.

■ We agree with the District Court that however vague and uncertain the agreement before it might have been as to appellant's rights in other respects, it is clear that it conferred on him no right to challenge the Railroad's good-faith judgment as to his physical fitness. If the agreement between the parties in any material respects had been amended, appellant had ample opportunity to present this fact on motion for summary

judgment. The motion granted was the second motion made by the Railroad. The first had been denied in order to give appellant the opportunity to present evidence respecting the contract. Gunther v. San Diego & A. E. Ry. (S.D.Cal. 1961) 192 F.Supp. 882. The Court explicitly pointed out in this respect:

"If counsel for the petitioner denies that Exhibit 'A' of said affidavit, as the same appears in the Clerk's file, is not the contract in controversy, then there is, of course, need for clarification." 192 F.Supp. at 887.

Appellant was also invited to show, by affidavit, what ambiguities in the contract he had in mind, and what parol evidence he deemed important in resolving them. ·

It was only when appellant failed to respond to the Court's invitation that, on a renewed motion, summary judgment was ordered. Under these circumstances this was not error.

Judgment is affirmed.

■ On appeal from the order denying his § 60(b) motion, appellant contends that the Court improperly rejected his newly discovered evidence.

The record before the District Court showed that while, at the time of appellant's removal from active service, there was no agreement that physical fitness was to be decided by a three-doctor panel, such an agreement was reached in 1959. Appellant by his newly discovered evidence sought to prove by correspondence between the Southern Pacific Company (appellee's parent) and the Brotherhood of Locomotive Engineers that in fact such an agreement had been reached in 1944, ten years before his removal.

The Court ruled "that the evidence offered was neither newly discovered nor of such a nature that it could not have been discovered by due diligence in time to move for a new trial."

Appellant attacks this determination. He explains his delay in learning of this evidence by the fact that he was a member not of the Brotherhood of Locomotive

Engineers but of a rival union and that the correspondence establishing the agreement was not available to him.

This may explain a lack of knowledge but it does not justify a failure to search or to inquire. More than a year passed between the denial of the Railroad's first motion for summary judgment (and the Court's invitation to appellant to present evidence of the agreement) and the filing of appellant's 60(b) motion. Denial of the motion under these circumstances was neither error nor abuse of discretion.

On its order denying 60(b) relief, the Court is affirmed.