See also D.C., 284 F.Supp. 607.

**SYSTEM FEDERATION, NO. 30, RAILWAY EMPLOYES' DEPARTMENT, AFL–CIO, et al., Plaintiffs,**

v.

**BRAIDWOOD et al., Defendants.**

**No. 67 C 708.**

United States District Court
N. D. Illinois, E. D.

April 19, 1968.

Richard Lyman, Toledo, Ohio, Jacob Martin, Martin Gross, Chicago, Ill., for plaintiffs.

John Gobel, Chicago, Ill., for defendant B. & O. Ry.

Aaron Wolff, Elson, Lassers & Wolff, Chicago, Ill., for defendant Labor Members of NRAB, 2d Division.

## MEMORANDUM OPINION

MAROVITZ, District Judge.

For Decision.

Plaintiff System Federation No. 30, Railway Employees' Department, AFL–CIO, an unincorporated association, consists of several local labor organizations which represent various crafts or classes of employees of the defendant Baltimore and Ohio Railroad, including the Brotherhood of Railway Carmen of America, which represents the craft of carmen. Plaintiff George M. Lyons is a member of the Brotherhood of Railway Carmen of America, whose claim against the defendant carrier was submitted to the National Railroad Adjustment Board (NRAB) by plaintiff System Federation. The defendant Baltimore & Ohio Railroad is a corporation organized under the laws of Maryland, which operates through the State of Illinois.

On April 28, 1967, System Federation No. 30, and George Lyons, as plaintiffs, filed this action to annul Award No. 4692 of the Second Division of the NRAB.[1] The parties have submitted a lengthy stipulation of facts, and it is agreed that only legal issues remain for decision. Briefs have been filed, and in this opinion, the Court will rule on the dispute.

Section 3, First, of the Railway Labor Act established the NRAB in 1934 as a permanent arbitration tribunal located in Chicago, consisting of four Divisions, with the carriers and certain national labor organizations selecting an equal number of members. 48 Stat. 1189 (1934), 45 U.S.C. Sec. 153 (1954). In accordance with the Railway Labor Act, whenever a dispute arises concerning the application of a collective bargaining agreement, the parties attempt to effect a settlement, but failing such a settlement, either party may submit the dispute to the appropriate division of the NRAB. 45 U.S.C. Sec. 153 First (i). If the Carrier and Labor Members of the NRAB fail to agree upon an award, either the members or the National Mediation Board selects a referee to break the deadlock. 45 U.S.C. Sec. 153 First (l).

This case stems from the injuries suffered by plaintiff George M. Lyons, a former employee of the Baltimore & Ohio Railroad, during the course of his employment on January 22, 1953. As a result of that accident Lyons was unable to work on a continuous basis. In June, 1954, Lyons stopped working entirely for

1. The complaint named as defendants, the ten members of the Second Division of the NRAB, the Executive Secretary of the Second Division, and the Baltimore & Ohio Railroad Company. In a Memorandum Opinion dated February 9, 1968, this Court dismissed the Carrier Members of the Division, upon their motion.

the B & O, and has not worked for the carrier since then. Upon failure to reach a settlement with the B & O for his injuries, Lyons instituted suit in the federal court for the Eastern District of Pennsylvania, and in 1957, obtained a verdict of $25,000. Lyons' counsel therein, argued and introduced evidence tending to show that Lyons' injuries were of a permanent nature.

In 1958, Lyons sought reinstatement from the B & O without the aid of his union. However, defendant's medical examiner rejected him as physically unfit. He then sought the assistance of his organization representative. All efforts to have Lyons restored to service were rejected by the B & O. A request that he be examined by a "neutral" doctor was also rejected.

In 1960 he instituted another federal court suit seeking reinstatement, but it was dismissed on March 15, 1963 for failure of plaintiff to exhaust his administrative remedies. The B & O had contended before the federal court that Lyons should be estopped to seek reinstatement, because he had contended in the earlier suit which resulted in the damage award, that he had suffered permanently disabling injuries. The Court did not find it necessary to rule on that argument in view of its decision.

Meanwhile, on March 19, 1962, the union again requested reinstatement for Lyons, and supplied the company with a report from Lyons' physician, indicating that Lyons had been examined, and was found to be physically fit for work. The request was denied.

The union then filed a claim with the NRAB contending that B & O had violated the collective bargaining agreement, and asking that Lyons be restored to service. Referee Bernard Seff was appointed by the National Mediation Board to participate with the Second Division. The carrier contended alternatively that the claim was untimely, and that Lyons' earlier assertion of permanent disability estopped him to introduce evidence before the Board to negate such

disability. On April 29, 1965, Referee Seff dismissed plaintiffs' claim, in Award No. 4692. However, he did not rule on either of the carrier's defenses, but based his decision on the following rationale, not urged by the carrier:

"Thereafter (after Lyons' recovery against the B & O), Lyons reapplied for work now claiming that he was fully recovered. The carrier's physician examined Claimant and reported that he was not physically able to perform his duties as the result of which carrier refused to reemploy him. Lyons then was examined by his own doctor who concluded that he was able to return to work. In the face of these conflicting medical reports claimant requested that the carrier establish a neutral medical board to make a final determination of his physical fitness. There is no contractual requirement for the establisment of a neutral medical board and the carrier refused this request.

"The carrier takes the position that having brought suit and having recovered $25,000, based in part at least on Lyons' contention that he was totally and permanently disabled, he was estopped from now stating that he was well.

"The instant case poses two questions:

(1) All other things being equal, does he have a right under the rules of the agreement to employment?

(2) If he has, is he physically able to perform the required duties?

"This case turns on the second question. In order to sustain the claim the Claimant must sustain the burden of proving that he is physically fit to do the job. In the present posture of the case however there is a hopeless conflict in the evidence: the Carrier's doctor says he cannot physically do the work in question; Claimant's doctor says he can do the work. In order to resolve this conflict the Organization requests that the Carrier agree to the establishment of a neutral medical board. The Carrier has no legal obli-

gation to agree to this proposal and refuses to take this action.

"This issue has been presented in two U. S. Circuit Courts and they have reached diametrically opposite conclusions. In the case of Hodges v. Atlantic Coast Line Railroad, 310 F.2d 438, the Fifth Circuit Court of Appeals held that, even in the absence of a contractual obligation to establish a neutral medical board, this seems a fair thing to do and it was so ordered.

"The Court went on to point out that while the NRAB had no authority under the statute to delegate its authority to a neutral doctor, this problem would not arise if after the receipt of the neutral board's decision the NRAB then decided the case based on the reports of record. In the case of Gunther v. San Diego & Arizona Eastern Railway Co., 336 F.2d 543, the Ninth Circuit Court of Appeals decided that it was beyond the authority of the Board to order the establishment of a neutral medical board since the parties had not obligated themselves to do so in their Agreement. Until such time as the U. S. Supreme Court resolves this difference between the circuit courts it is impossible to know what the law is on this point.

"Under the circumstances of the instant case it cannot be determined on the merits, since both the evidence and the law of the case are in direct conflict. In our view of the matter it therefore becomes unnecessary to pass on the question as to whether the claim was filed within the proper time limits."

Following that decision, the Supreme Court reversed the Ninth Circuit decision in Gunther v. San Diego & Arizona Eastern Railway, in 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965). The Court held, inter alia, that the NRAB had the authority to order the establishment of a neutral medical board if it so wished. Based on that decision, the plaintiffs petitioned the Second Division to set aside Award No. 4692, to reopen the matter, and to decide it on its merits. The Second Division denied the petition, advising plaintiffs that it had failed to carry for lack of a majority. Referee Seff did not participate in the consideration and disposition of the petition, even though an order of the National Mediation Board, dated May 3, 1966, directed him to sit as a member of the Division for this purpose, and even though the petition referred to such order and specifically was directed at the *eleven* members of the Division.

Having exhausted their administrative remedies, plaintiffs filed the instant complaint as a petition for review of the Board's order, under the 1966 Amendments to the Railway Labor Act, 45 U.S.C. Sec. 153 First (q), 80 Stat. 208 209 (1966).[2]

The complaint characterizes this case as an action to annul Award No. 4692. It

2. Subsection (q) provides:
"If any employee or group of employees, or any carrier, is aggrieved by the failure of any division of the Adjustment Board to make an award in a dispute referred to it, or is aggrieved by any of the terms of an award or by the failure of the division to include certain terms in such award, then such employee or group of employees or carrier may file in any United States district court in which a petition under paragraph (p) could be filed, a petition for review of the division's order. A copy of the petition shall be forthwith transmitted by the clerk of the court to the Adjustment Board. The Adjustment Board shall file in the court the record of the proceedings on which it based its action. The court shall have jurisdiction to affirm the order of the division or to set it aside, in whole or in part, or it may remand the proceeding to the division for such further action as it may direct. On such review, the findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order. * * * "

alleges that the Second Division did not comply with the requirements of the Railway Labor Act by reason of its failure to decide and determine the merits of the dispute. It furthermore prays that this Court declare Award No. 4692 illegal and void, and issue a mandatory ·injunction compelling the Second Division to reopen its docket in this case and determine the dispute on its merits.

The enactment of Public Law 89–456, 80 Stat. 208, 209, 45 U.S.C. Sec. 153 First (q), provided a statutory vehicle for judicial redress in the form of a petition for review, for any employee or group of employees or any carrier, aggrieved by the failure of the Adjustment Board to make an award in a dispute referred to it, or aggrieved "by any of the terms of an award or by the failure of the division to include certain terms in such award." The section further provides, in accordance with the *Gunther* decision, that "the findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order."

In *Gunther*, the Supreme Court held that a federal court may not review an NRAB award *on the merits*, unless it is "wholly baseless and completely without reason." 382 U.S. 257 at 261, 86 S.Ct. 368 at 371. The 1966 Amendments to the Railway Labor Act were intended to codify the *Gunther* doctrine, inter alia, and the House Committee Report contains the following statement of intention:

"* * * a Federal Court would have the power to decline to enforce an award which was actually and indisputably without foundation in reason or fact, and the Committee intends that under this bill, the courts will have that power." 112 Cong.Rec. 12450 (1966).

Plaintiffs contend that the NRAB has failed to comply with the requirement of the Railway Labor Act that it make a final award which decides a dispute submitted to it. It is plaintiffs' position that Award No. 4692 is not an "award" at all, since it fails to reach a decision on the dispute submitted to the Board, and is simply a statement of the Second Division's inability or unwillingness to decide the case because of the conflict, at that time, in the governing law.

Defendant apparently is itself dissatisfied with the rationale of Award No. 4692, but obviously not with the result thereof. It argues, however, that the Court has no power to overturn the award under subsection (q), because the Board complied with the "requirements" of the Act. The act states in subsection (n) that a majority vote of the members of the Board "shall be competent to make an award with respect to any dispute submitted to it," and further requires, in subsection (m), that the awards shall "be stated in writing."

■ Since plaintiffs charge that the Board failed to make an "award," and consequently, that it failed to comply with the "requirements" of the Act, it cannot be disputed that plaintiffs have stated a cause of action under Sec. 153 First (q).

But there can be no dispute that, in literal terms at least, the Board did issue an "award" in the manner called for by statute. That is, Award No. 4692 was issued by a majority vote of the Second Division, and was in writing. The question facing the Court, is whether such literal compliance with the Act, where the Referee admittedly declined to rule on the merits of the dispute, constituted actual compliance with the requirements and spirit of the Act, or merely paid lip service to them.

■ The NRAB has exclusive primary jurisdiction over disputes between unions and carriers based on the provision of a collective bargaining agree-

ment. Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950). This statutory grievance procedure is not only exclusive, but is mandatory, and constitutes a ccmprehensive system for resolving grievance disputes. It persists even after retirement of a railroad employee should he later undertake to assert claims under the collective bargaining agreement by judicial action. Pennsylvania R. Co. v. Day, 360 U.S. 548, 79 S.Ct. 1322, 3 L.Ed. 2d 1422 (1959).

Since an aggrieved employee may not initially turn to the courts for relief, it is not surprising that the Supreme Court construed the Act in Union Pacific R. Co. v. Price, 360 U.S. 601, 616, 79 S.Ct. 1351, 1359, 3 L.Ed.2d 1460 (1959), as follows:

"Plainly the statutory scheme as revised by the 1934 amendments was designed for *effective and final decision of grievances* which arise daily, principally as matters of the administration and application of the provisions of collective bargaining agreements." (emphasis added)

The rationale implicit in *Gunther* and in the 1966 Amendments making the Board's determination conclusive upon subsequent judicial review, was the intention that the Board effectively and finally decide contract grievances. Indeed, the Supreme Court has accorded Board decisions the same finality as would be accorded decisions of arbitrators. Brotherhood of Railroad Trainmen v. Chicago River & Indiana R. Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957); Brotherhood of Locomotive Engineers v. Louisville & Nashvil!e R. Co., 373 U.S. 33, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963). In enacting the Railway Labor Act, Congress entrusted the construction of bargaining agreements to the Board, in the belief that the Board's expertise in these matters would provide for a more effective decision making process than the courts could bring to bear.

■ However, the rationale of the *Gunther* case was premised upon the assumption that the Board determine the grievance on "the merits." And we believe that "merits" in the *Gunther* sense, would encompass a dismissal hinged upon a lack of jurisdiction over the subject matter. But Award No. 4692 clearly indicated that the Board had jurisdiction over the instant dispute.

■ In view of the exclusive nature of the proceedings before the Board, and the conclusive effect to be accorded its findings, on the facts of this case, we believe a Board decision such as Award No. 4692, which declines to venture a decision on the merits, would effectively operate to deny the aggrieved plaintiffs the rights Congress intended to provide them, should we be bound by the Board's order. Indeed, the effect of the Board's refusal to decide the issues presented to it, operated to extinguish Lyons' claim, without according him a proper hearing. Such action amounts to a denial of his right to due process, and, in our judgment, is a failure by the Board to fulfill its duties under the Act, which include the "effective and final decision of grievances" presented to it.

We cannot believe Congress would have countenanced the payment of homage to a Board decision, in which the Board clearly abdicated its responsibilities under the Act, merely because the Board expediently characterized its decision as an "Award." On the facts of this case, we do not believe the Board complied with either the spirit or the requirements of the Act by its Award No. 4692.

In the words of *Gunther,* we respectfully believe the Board's decision and its refusal to reopen the decision after *Gunther* clarified the law, amounted to a course of conduct which was "wholly baseless and completely without reason."

■ It is clear that a court may fashion relief to remedy the Board's breach of statutory requirements. As our Court of Appeals said in Brother-

hood of R.R. Trainmen v. Swan, 214 F.2d 56 (7th Cir. 1954):

> "The statutory duty of the Division became clear when the courts declared void the awards because of the absence of the express-messengers. The effect of the voiding of the awards was to leave the five cases pending and undisposed of. Thereupon it became and still is the duty of the Division to hear and dispose of these cases, * * *." (at 58)
>
> * * * * * *
>
> "We express no opinion as to what the findings or decisions of the Division on a new hearing should be. The making thereof requires an exercise of judgment by the members of the Division. It is, however, required that the Division proceed as above outlined. By so doing, it may perform its duty to determine the rights of the contending parties." (at 59).

The Supreme Court stated its views even more forcefully in Order of Railway Conductors of America v. Swan, 329 U.S. 520, 524, 67 S.Ct. 405, 407, 91 L.Ed. 471 (1947):

> "We are dealing here with something quite different from an administrative determination which Congress has made final and beyond the realm of judicial scrutiny. We are dealing with a jurisdictional frustration on an administrative level, making impossible the issuance of administrative orders which Congress explicitly has opened to review by the courts. Until that basic jurisdictional controversy is settled, the procedure contemplated by § 3 of the Railway Labor Act remains a dead letter so far as yard-masters are concerned and the statutory rights of such persons become atrophied. * * *"

We believe the statutory rights of the plaintiffs herein may well become "atrophied" unless the Board is compelled to decide the instant dispute on the merits. Since we feel that the Board's Award No. 4692 does not comply with either the requirements or spirit of the Railway Labor Act, we need not accord it conclusive effect. Pursuant to Sec. 153 First (q), we remand this case to the Second Division for proceedings not inconsistent with this opinion. Such proceedings, of course, *may* include the convening of a panel of neutral doctors, pursuant to *Gunther*, but also should decide the issue of estoppel raised by the carrier. Of course, we do not imply any opinion as to the merits of this case, for that is solely the province of the Board. But, in our judgment, it *must* exercise its judgment thereon. The carrier's presumptuous suggestion that we should not disturb this Award because it reached the right result for the wrong reasons, would amount to our issuing a ruling on the merits. We shall decline the invitation to do so.