Henry J. POMPEO, Plaintiff,

v.

**ERIE–LACKAWANNA RAILROAD COMPANY, Defendant.**

Civ. No. 9566.

United States District Court,
W. D. New York.

Aug. 4, 1972.

John T. Collins, Buffalo, N. Y., for plaintiff.

Moot, Sprague, Marcy, Landy & Fernbach, Buffalo, N. Y. (Richard F. Griffin, Buffalo, N. Y., of counsel), for defendant.

CURTIN, District Judge.

On May 20, 1958, plaintiff was discharged by the Delaware, Lackawanna & Western Railroad (now part of the Erie-Lackawanna Railroad Company) because he had falsely stated on his employment application in May, 1950 that he had not been arrested or convicted. He successfully appealed the dismissal to the National Railroad Adjustment Board which, on December 16, 1960, reinstated him, providing as follows:

.  .  .  the claimant [shall be] reinstated with seniority rights unimpaired, vacation privileges preserved, and payment for each day lost from the carrier's service from May 20, 1958.

At that time, Section 3(p) of the Railway Labor Act, 45 U.S.C. § 153(p), permitted an action *de novo* in the district court in which the findings and order of the Board were deemed to be prima facie evidence of the facts therein stated. When the railroad refused to comply with the award of the Board, plaintiff instituted this suit on February 20, 1962.

The case was tried on December 8, 1964 before Judge John O. Henderson sitting with a jury. In addition to being instructed to consider whether plaintiff had made a false answer to the question about his arrest and conviction record, the jury was instructed to consider whether plaintiff had given a false answer when he denied ever being injured. In fact, he had injured his wrist in the service and had been awarded a permanent partial disability. During the proceeding before the Board, the railroad had not relied upon the withholding of the information about the injury. The jury was unable to agree upon a verdict.

Before the case was again set for trial, the Supreme Court, on December 8, 1965, decided Gunther v. San Diego & A. E. Ry., 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965), which provided that awards of the Board were final and binding except insofar as they provided for monetary damages. Plaintiff then moved for summary judgment granting reinstatement. By decision dated July 11, 1966, Judge Henderson enforced that portion of the Board's award requiring reinstatement, but he held that computation of monetary damages must await further proceedings. An order putting the court's decision into effect was not entered until January 19, 1967. The order provided that plaintiff was to be reinstated "subject to all rules and regulations of the Erie-Lackawanna Railroad Company." This language was intended to make clear that plaintiff was required as a condition of reinstatement to submit to medical examination to determine whether he was physically qualified to return to work and to perform the duties he had performed prior to his discharge. The results of examination were not received until March 7, 1968, on which date plaintiff was notified that he had been found unqualified for further employment.

In the meantime, on June 20, 1966, the Railway Labor Act was amended by Public Law 89-456. The effect of the amendment was to make a money award, as well as an award of other relief "final and binding upon both parties to the dispute." 45 U.S.C. § 153(m). On June 24, 1968, Judge Henderson held that the amendment applied to the instant case but ordered the case remanded to the Board on the ground that the award was "incomplete." Judge Henderson wrote:

No amount is mentioned in the Board's award.  .  .  .  The present award is silent as to the length of time such payment is to continue; the rate of pay per day; whether deductions should be made from outside earnings of the plaintiff during the period of the award; and other questions of damages which are in issue.

On December 13, 1971, the Board issued an "Interpretation" of its earlier order. The Board wrote:

.  .  .  the award as originally written, made no provision for deduction of outside earnings, and there was no

intent to provide for deduction of outside earnings. As the parties have determined the amounts which are in question, no discussion of such earnings will be made here.

After the order of the Board was received by the Clerk of this court, plaintiff moved for summary judgment or, in the alternative, for "such further proceedings in the action as are just." Defendant cross-moved for vacation of Judge Henderson's order of January 19, 1967, requiring plaintiff's reinstatement by defendant, or, in the alternative, for suspension of the order pending further proceedings. Defendant also cross-moved for an order limiting the issue of damages to a period from May 20, 1958 to the date of plaintiff's reinstatement, for an order setting the scope of the trial of the issue of damages, for an order granting discovery on the issue of damages,[1] for an order denying interest on any award of damages, and for an order denying or limiting allowance of an attorney's fee.

At the request of Judge Henderson and with the consent of the parties, the motions were transferred to my part for decision. After considering the original papers filed in support of the motions, I entered on April 13, 1972 an order directing the parties to file additional affidavits. After considering all of the above material, the court is now ready to decide the motions.

Turning first to defendant's cross motion for vacation or suspension of Judge Henderson's order of January 19, 1967, defendant argues that the Board's order of reinstatement should be set aside "for failure of the order to conform, or confine itself, to matters within the scope of the [Board's] jurisdiction." 45 U.S. C. § 153(q). Defendant's contention rests upon Judge Henderson's instructions to the jury at trial of the case in 1964, prior to the Supreme Court's decision in *Gunther, supra*, and prior to the

1966 amendments to the Act. Judge Henderson instructed as follows:

Now upon reviewing the findings of the Adjustment Board, you will not be able to understand what violation of plaintiff's legal and contractual rights justify its award. I charge you that the findings of the Board, on the issues before it, do not substantiate its award for the reason that the findings disclose no violation of either the plaintiff's contractual or legal rights.

The meaning of an award "not within the scope of the [Board's] jurisdiction" was discussed in Brotherhood of Railroad Trainmen v. Central of Ga. Ry. Co., 415 F.2d 403, 407–15 (5th Cir. 1969). The court read the statutory language to mean, in the words of the report of the Senate Labor and Public Welfare Committee explaining this provision for judicial review, "an award which was actually and indisputedly without foundation in reason or fact." 1966 U.S.Code Cong. & Admin.News, pp. 2285, 2287. In turn, the court interpreted an award founded in reason or fact as one which is "in some logical way, . . . derived from the wording or purpose of the contract." 415 F.2d at 412.

The Senate committee report just referred to characterized the Board as an "arbitration tribunal." 1966 U.S.Code Cong. & Admin.News at p. 2287. The Supreme Court has indicated that the courts should give broad leeway to arbitrators' award as long as the award "draws its essence from the collective bargaining agreement." United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 597, 80 S. Ct. 1358, 1361 (1960).

■ Applying this principle governing arbitration to the instant case, the court cannot say that the order of the Board exceeded its jurisdiction and should be set aside.

From the order it is apparent that the Board considered the whole issue of

---

1. An order providing for the taking of plaintiff's deposition and for the production of certain documents was signed by the court on June 2, 1972, and the discovery has taken place.

plaintiff's discharge by defendant rather than the narrow issue of whether the investigation preceding the discharge was fair and impartial. The collective bargaining agreement between plaintiff's union and defendant permitted discharge of an employee only for "just cause." The Board interpreted the requirement of "just cause" in light of the facts of petitioner's case and concluded that the mere fact that plaintiff gave false answers regarding his arrest record on the application for employment did not justify his discharge. The Board's reasoning was that the information concealed was not the sort which would have resulted in plaintiff not being hired originally, and that therefore the falsification did not present "just cause" for discharge. The necessity of materiality was recognized by Judge Henderson in his instructions to the jury. He charged as follows:

> . . . I charge you that false answers and concealment in response to any material inquiry appearing on the application would constitute just cause for discharge. I further charge you that any concealment by the plaintiff of his arrest record, or any concealment or false statement of his personal injury history, *which had a significant bearing on his fitness to perform his duties*, would be a material inquiry for which the railroad had the right to discharge for just cause. [Emphasis added.]

Defendant recognizes the broad scope of the proceeding before the Board by moving for suspension of Judge Henderson's order of January 19, 1967 pending determination whether plaintiff's *discharge* was justified by his failure to reveal on his application for employment the prior injury. The issue before the Board and in subsequent litigation was whether plaintiff's discharge was permissible under the collective bargaining agreement. The Board had jurisdiction to determine this question, and defendant's motion to set aside the award of the Board is denied.

Defendant's motion to suspend the Board's award pending a determination whether plaintiff's discharge was justified by his concealment of prior injury is also denied. The question before the Board was whether plaintiff's discharge was merited by "just cause." Defendant asserted that plaintiff was discharged for concealment of his arrest record, and to now allow it to advance an *ex post facto* justification would run contrary to the statutory provision that an award is "final and binding upon both parties to the dispute." 45 U.S.C. § 153(m). Discovery of a new ground justifying a discharge does not render an award unfounded in reason or in fact and therefore subject to being set aside as outside the scope of the Board's jurisdiction under 45 U.S.C. § 153(p). *See* Brotherhood of Rail. Signal. v. Chicago, M., St. P. & P. R. Co., 444 F.2d 1270, 1273–1274 (7th Cir. 1971).

The foregoing motions by defendant having been decided adversely to defendant, plaintiff's motion for summary judgment on the issue of defendant's liability for monetary damages is granted. Fed. R. Civ. P. 56(c). There remains for determination the question of the amount of damages, including interest and an attorney's fee.

The Board's "Interpretation" of its original order indicates that in calculating damages no deduction of outside earnings is to be made. The "Interpretation" does not indicate the exact amount of damages due plaintiff, nor does it indicate the termination date of the period for which damages are due. These deficiencies, however, do not prevent the court from "determin[ing] what actual dollars and cents the employee is entitled to" under the Board's award. Sweeney v. Florida East Coast R. Co., 389 F.2d 113, 115 (5th Cir. 1968) (Board award provided that employee was to be compensated for "time lost"). As a rule, the damage period terminates on the date a wrongfully discharged employee is reinstated. *See* Barrett v. Manufacturing R. Co., 254 F.Supp. 376 (E.D.Mo.1966).

■ In this case, however, two factors raise doubt as to whether the damage period should terminate on the date of reinstatement. First, although Judge Henderson rendered on July 12, 1966 his decision requiring plaintiff's reinstatement, the order enforcing the decision was not entered until January 19, 1967. Second, the January 19 order was not complied with until March 7, 1968, on which date plaintiff was notified that following medical examinations he was found disqualified for service with defendant. The court does not believe that plaintiff should be penalized for any delay caused by others. On the other hand, plaintiff should not be compensated for any period of delay for which he was responsible. The termination date for the damage period should be calculated by subtracting from March 7, 1968 the number of days delay in the period from July 12, 1966 to March 7, 1968 caused by delay attributable to plaintiff or his attorney. The affidavits submitted by the parties in response to the court's order of April 13, 1972 do not resolve this issue. If the parties cannot agree upon a termination date, a hearing will be held to determine it.

■ The amount of damages allowed plaintiff should be equal to the earnings of an employee immediately below plaintiff in seniority during the damage period. *See* Barrett v. Manufacturing R. Co., *supra*, at 380; Raabe v. Florida East Coast R. Co., 259 F.Supp. 351, 355 (M.D.Fla.1966). The court agrees with the courts in *Barrett* and *Raabe* that this approach provides a reasonable basis for computing the monetary award, for it allows plaintiff the same compensation as that received by the employee who replaced him. *See* 254 F.Supp. at 380; 259 F.Supp. at 355. If the parties cannot agree upon a procedure to be used to determine the appropriate rate and the ultimate award to be made to plaintiff, the court will hold a hearing to resolve these questions.

■ Although the Railway Labor Act makes no provision for prejudgment interest, such interest may be granted. *See* Laday v. Chicago, M., St. P. & P. R. Co., 422 F.2d 1168, 1171 (7th Cir. 1970); Raabe v. Florida East Coast R. Co., *supra*, at 356; Dieringer v. Chicago, M., St. P. & P. R. Co., 278 F.Supp. 211, 213–14 (E.D.Wis.1968). Where an award has been remanded to the Board for clarification, however, courts have been reluctant to allow interest, *see* Laday v. Chicago, M., St. P. & P. R. Co., *supra*, at least until the date of the clarifying order. *See* Brotherhood of Rail. Signal. v. Chicago, M., St. P. & P. R. Co., *supra*, at 1274. It is therefore ordered that interest on plaintiff's award commence to run as of December 13, 1971, the date of the Board's "Interpretation."

■ The Railway Labor Act does provide that "[i]f the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit." 45 U.S.C. § 153(p). Without discussing the factors which will be applied in determining what constitutes "a reasonable attorney's fee," defendant's motion for an order denying or limiting such fee is denied. Plaintiff's counsel is directed to submit a request for allowance of fee to be taxed and collected as part of the costs of the suit. If the parties cannot agree on an appropriate amount, a hearing will be held to set the attorney's fee.

Counsel are directed to appear on August 10, 1972 at 10:00 A.M. for a pre-trial conference to discuss the issues still pending before the court. If the problems remaining cannot be resolved at the conference, it is the intention of the court to proceed as soon as possible to any hearings necessary. Therefore, when counsel appear for the pretrial meeting, they shall have ready for marking all exhibits which are necessary for any hearings to be held, a list of witnesses for the hearings and a detailed statement setting forth each witness' proposed testimony.

So ordered.