Carleton N. MONAGHAN

v.

CENTRAL VERMONT RAILWAY, INC.

Civ. A. No. 71–1643–F.

United States District Court,
D. Massachusetts.

Nov. 19, 1975.

---

———◆———

Robert E. McCarthy, Malone, Mc-
Carthy & Hunt, Boston, Mass., for plain-
tiff.

Evan Y. Semerjian, Hale & Dorr, Bos-
ton, Mass., for defendant.

## MEMORANDUM AND ORDER

FREEDMAN, District Judge.

This motion is before the Court upon
cross motions for summary judgment.
Plaintiff seeks enforcement of an award
rendered by the National Railroad Ad-
justment Board. Defendant resists the
enforcement and asks that the award be
set aside. Jurisdiction exists under sec-
tion 3 First (p) of the Railway Labor
Act, 45 U.S.C. § 153 First (p).

In March, 1966, plaintiff, Carleton N.
Monaghan, was employed by defendant
Central Vermont Railway, Inc. as an en-
gineer. At that time he was a member
of the Brotherhood of Locomotive Fire-

men and Engineermen and was there-
fore a party to that union's collective
bargaining agreement with the defend-
ant railway. On March 4, 1966, plain-
tiff, who had been working for almost
16 hours, was told by the Trainmaster-
Road Foreman while on board his engine
that he was relieved from all further du-
ties. He got down from the engine at
that time, approximately 7:13 p. m. or
7:14 p. m. Plaintiff thereupon went to
the railway call office, where he com-
pleted a work report Form CV538 and
booked out at 7:23 p. m. Following an
investigation by the defendant, plaintiff
was discharged for alleged insubordina-
tion. That insubordination, according to
defendant's answers to plaintiff's inter-
rogatories, was said to be

> [f]ailing to obey order relieving
> claimant of all duties at 7:13; con-
> tinuing to perform duties of which he
> had been relieved; booking off late in
> violation of applicable rules. Viola-
> tion of duties of employment. Viola-
> tion of Hours of Service Act.

Plaintiff's labor union appealed the dis-
charge within company channels, even-
tually reaching the chief operating offi-
cer of the railway. The discharge was
upheld throughout.

Plaintiff then appealed to the First
Division of the National Railroad Ad-
justment Board (hereinafter the Board).
After a hearing, the Board, on July 17,
1970, found that plaintiff had been un-
justly discharged and ordered that he be
reinstated with seniority rights unim-
paired and with full pay for all time lost
since March 4, 1966, until reinstated.
The Board further ordered that the de-
fendant comply by August 17, 1970.
Defendant would not so comply. Plain-
tiff subsequently filed suit in this Court
on August 11, 1971.

### I

Before setting out the Court's
reasoning behind its decision, it will be
helpful to devote some initial discussion
to the Railway Labor Act. Section 3
First (i) of the Act provides that "dis-

putes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements . . . may be referred" to the Adjustment Board. 45 U.S.C. § 153 First (i). As stated by the Supreme Court in *Gunther v. San Diego & Arizona Eastern Ry.*, 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965), Congress' intent in enacting section 3 of the Act was to create "an expert body to settle 'minor' grievances . . . which arise from day to day in the railroad industry." *Id.* at 261, 86 S.Ct. at 370. The Board is "peculiarly familiar with the thorny problems and the whole range of grievances that constantly exist in the railroad world." *Id.* Furthermore, once the Board has made a decision as to a particular grievance and the "carrier does not comply with an order of a division of the Adjustment Board," under the Railway Labor Act the employee may file suit in the United States District Court. 45 U.S.C. § 153 First (p). In such a suit the findings and order of the Board are conclusive on the parties. Consequently, the Board's

> order may not be set aside except for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction . . . .

*Id.*

In keeping with section 3 of the Railway Labor Act, there has arisen a well established principle that the "courts will not review the merits of arbitration awards so long as the award is based properly on the applicable collective bargaining agreement." *Rossi v. Trans World Airlines, Inc.*, 507 F.2d 404, 405 (9th Cir. 1974) (citing *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596–97, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)).

## II

■ Defendant argues that it has a common law right to discharge its employees at will. The Supreme Court has recognized that right in *Andrews v. Louisville & Nashville R.R.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972). It does state in *Andrews*, however, the exception to this standard, saying "that the only source of petitioner's right not to be discharged . . . is the collective-bargaining agreement between the employer and the union." *Id.* at 324, 92 S.Ct. at 1565. A major question that arises in this case, therefore, is whether any provision in the collective bargaining agreement provides a basis for the inability of defendant to discharge plaintiff or any other employee at will. Defendant reasons that, since the agreement nowhere states that an employee cannot be discharged at will, the Board, by denying the defendant the ability to do so, has in effect altered or amended the agreement, an action beyond its jurisdiction. Plaintiff, on the other hand, argues that Article 41 of the collective bargaining agreement "affords protection to employees . . . against arbitrary disciplinary action . . . and provides a basis for appeal to the National Railroad Adjustment Board." What appear to exist then are differing interpretations as to that part of the collective bargaining agreement.

Article 41 of the agreement, entitled Investigation, states:

> Engineers or firemen charged with misdemeanors shall have their cases investigated promptly and if found innocent shall be paid for lost time; if found guilty they will be informed of the final decision arrived at as soon as possible. At investigations, engineers or firemen may be accompanied by a member of their committee. They will be advised when practicable the nature of the case to be investigated. In case of discipline, right of appeal will be granted if exercised within thirty days.

While the above provision may be unclear as to the procedure by which an employee may appeal a disciplinary action, it appears as if the parties had in mind some sort of manner in which to

further resolve such controversies. In any event, although Article 41 may be ambiguous and poorly worded in this regard, it is not the position of this Court to interpret what the parties meant when they included it in their agreement. The Board has apparently deemed itself capable of hearing the claim brought by plaintiff. It must, therefore, have determined that a basis is provided in the agreement whereby employees cannot be discharged at will and whereby such aggrieved employees can eventually appeal to the Board.

■ There appears to be case law to support the position that the lack of clear language in the agreement concerning discharge and appeal rights will not deny the Board the ability to interpret the agreement in a light favorable to plaintiff in this case. The Supreme Court has recognized that a collective bargaining agreement may not always sufficiently cover situations that may arise between employer and employee. In this regard it states that such an agreement "is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate." *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 578, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409 (1960). The Court has quoted with approval one commentator's position:

"... [I]t is not unqualifiedly true that a collective-bargaining agreement is simply a document by which the union and employees have imposed upon management limited, express restrictions of its otherwise absolute right to manage the enterprise, so that an employee's claim must fail unless he can point to a specific contract provision upon which the claim is founded. There are too many people, too many problems, too many unforeseeable contingencies to make the words of the contract the exclusive source of rights and duties. One cannot reduce all the rules governing a community like an industrial plant to

fifteen or even fifty pages. Within the sphere of collective bargaining, the institutional characteristics and the governmental nature of the collective-bargaining process demand a common law of the shop which implements and furnishes the context of the agreement. We must assume that intelligent negotiators acknowledged so plain a need unless they stated a contrary rule in plain words."

*Id.* at 579–80, 80 S.Ct. at 1351 (quoting from Cox, *Reflections Upon Labor Arbitration,* 72 Harv.L.Rev. 1482, 1498–99 (1959)).

■ The case here involves an allegedly wrongful discharge of plaintiff employee. Such "claims for wrongful discharge under railroad collective bargaining agreements are subject to resolution only by compulsory administrative procedures provided by the collective agreement and by the Railway Labor Act." *Rinker v. Penn Central Transportation Co.,* 350 F.Supp. 217 (E.D.Pa.1972) (citing *Andrews v. Louisville & Nashville R.R.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L. Ed.2d 95 (1972).

■■ The Board has apparently interpreted the agreement to mean that plaintiff could not be discharged at will and that the Board could rule on the validity of plaintiff's discharge. It has been recognized that the Board has exclusive jurisdiction, under section 3 First (i) of the Railway Labor Act to interpret the meaning of terms in a collective bargaining agreement when disputes arise between employees and carriers. *Glover v. St. Louis-San Francisco Ry.,* 393 U.S. 324, 328, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969). In light of the decision in *Glover,* this Court is bound by this apparent decision of the Board.

### III

The defendant further argues that since the Board's "award must have a basis in the collective bargaining agreement," and since the award in this case "contains no reference whatsoever" to

that agreement, "[i]t should, therefore, be refused enforcement 'for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction.' 45 U.S.C. § 153(p)." The Supreme Court has stated that an arbitrator's "award is legitimate only so long as it draws its essence from the collective bargaining agreement." *United ed Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). Whether this means that the award should make actual reference to the bargaining agreement as support, however, is a question that remains unclear. In this regard, the Ninth Circuit's approach in *Rossi v. Trans World Airlines, Inc.*, 507 F.2d 404 (9th Cir. 1974), is most relevant.

*Rossi* involved a flight engineer who had been discharged because his work had been deemed unsatisfactory. The dismissal was sustained by the Pilot's System Board of Adjustment, a board established under the collective bargaining agreement pursuant to the Railway Labor Act as applied to carriers. The District Court and Court of Appeals both affirmed the Board's ruling. Reiterating the principle that courts will avoid reviewing arbitration awards as long as they are based properly in the applicable bargaining agreement, the Ninth Circuit went on to state:

> An arbitrator is not confined to the express terms of the contract, however. Where the contract is not explicit, he may apply the "common law of the shop." *Anaconda Co. v. Great Falls Mill & Smeltermen's Union No. 16*, 402 F.2d 749, 752 (9th Cir. 1968).

*Rossi v. Trans World Airlines, Inc.*, 507 F.2d at 405 (footnote omitted). The portion of the court's decision that followed appears sufficiently applicable to the present case to be quoted in full:

> When [the Board] decided that Rossi's discharge was justified, it decided his case on its merits, not on a procedural technicality. Therefore, so long as that decision was based on TWA's

collective bargaining agreement, it is not subject to our review. Rossi argues that the Board had no reasonable basis to decide that his dismissal as flight engineer was justified simply because he failed to achieve promotion to first officer. The arbitration board, drawn from the industry, was better able to make that determination than is this court. . . . In any event, we cannot require an arbitration board to spell out for our benefit the logical process by which it makes its decision. *Enterprise Wheel*, 363 U.S. at 598 . . . .. We find no indication in the record that the Board ignored the terms of the collective bargaining agreement—as derived both from its express provisions and from the customary practices of the industry—and dispensed its "own brand of industrial justice." *Id.* 363 U.S. at 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424.

507 F.2d at 405 (footnote omitted).

■ Based on the reasoning of the Ninth Circuit in *Rossi*, the Court feels that the lack of specific reference to the collective bargaining agreement in the Board's award is not fatal to its validity, as long as it draws its "essence" from that agreement. The Court finds no indication that it does not.

## IV

Defendant challenges the Board's reliance on Bulletin No. 1515 in its determination that plaintiff was wrongfully discharged. Bulletin No. 1515, dated October 28, 1965, was written by defendant's Superintendent of Equipment and addressed "TO ALL CONCERNED." Its pertinent portion states:

> Engine crews are hereby reminded of their responsibility in properly reporting on Form CV 538 any defects, malfunctions or unusual conditions noted while enroute. This form must be completed prior to releasing the unit(s) at repair tracks or exchanging units enroute.

As already discussed, the reason for plaintiff booking out at 7:23 p. m. was

the fact that he went to the call office to complete Form CV538. Thus, the completion of that form relates specifically to his alleged insubordination. Addressing itself to this issue, the Board stated in its findings:

> Bulletin #1515 . . . requires the completion of Form CV538 by the Engineers. Even though Claimant had been relieved of all further duties, he still was obligated to complete this form, to the best of his ability, as required by Bulletin #1515. Having then done all that was required of him, Claimant promptly left the call office.

Defendant objects to the Board's reliance on the bulletin, stating that it is directed to engine crews and not just engineers, such as plaintiff. It further says that the situation in question did not involve releasing of the engine at repair tracks or exchanging of it enroute, and therefore that Form CV538 did not have to be completed.

 The issue that arises regarding Bulletin No. 1515, therefore, was whether plaintiff was insubordinate in not *immediately* stopping all duties of his job at 7:13 p. m. Questions immediately present themselves. How literally has and should Bulletin No. 1515 be taken? Was it normal practice for engineers to fill out Form CV538? Was the form normally completed in situations other than those spelled out in Bulletin No. 1515? Had plaintiff not normally completed Form CV538 in a situation as presented in this case, why would he have done so on March 4, 1966? Obviously, the Court is not in the position to answer these questions or to determine what was in the mind of the Superintendent of Equipment when he issued the Bulletin. Arguably, the completion of the form conflicts with the foreman's telling plaintiff that he was relieved of all further duties. Yet, it should be pointed out that the reason for completion of the Form CV538 was that "[f]ailure to report malfunctions or unusual conditions have resulted in unnecessary deadhauling, unit failures, and train delays." In addition, Bulletin No. 1515 had been issued more than four months prior to plaintiff's alleged insubordination. There may well have been an understanding amongst engine crews that Form CV538 was to be completed by the engineer. Plaintiff, on March 4, 1966, may well have felt that his neglect to complete the form would have been insubordination in itself. Once again, however, the Court cannot resolve such questions. The necessity of completing Form CV 538 was a question before the Board in reaching its determination. That body, well versed in aspects of railway practices and railway labor disputes, is much better qualified to consider such issues when reaching a determination as to the validity of plaintiff's discharge. The Court finds no reason for disagreeing with the Board's finding that plaintiff was obligated on the evening of March 4, 1966, to complete Form CV538.

 Defendant further claims that the collective bargaining agreement had no requirement that plaintiff complete Form CV538, and that therefore the Board's award is contrary to that agreement. As to this argument, the Court repeats the rationale in *Rossi* and *Anaconda, supra*, that an arbitrator may apply "the common law of the shop" and the "customary practices of the industry," as well as the Supreme Court's statement in *Warrior & Gulf Navigation Co., supra*, that such an agreement "is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate." Such safety measures as Form CV538 would be useless if the Board could not find them applicable in a case merely because they are not provided for in a collective bargaining agreement. There is no reason here to disagree with the Board's determination.

V

Defendant argues that by not booking off until 7:23 p. m., instead of 7:13 p. m., plaintiff violated the Hours of Service Act, 45 U.S.C. § 61 *et seq.* As per-

tains here, that Act makes it unlawful for a carrier to require or permit an employee such as plaintiff to continue working when he has not had eight consecutive hours off during the preceding twenty-four hours. Defendant reasons that, because of the statute, the collective bargaining agreement contains Article 24, which provides that "Engineers or Firemen tied up in accordance with law will not be required to watch or care for engines or perform other duties." The Board's award, defendant continues, by stating that plaintiff was obliged to remain for the extra minutes which possibly went beyond the statutory 16 hours and complete Form CV538, is unenforceable because it contradicts the Hours of Service Act and the collective bargaining agreement.

■■■■■ Under the circumstances, the Court does not feel that such an argument is sufficient to vitiate the Board's award. The basic purpose of the Hours of Service Act is to promote safety "by preventing 'the excessive mental and physical strain which usually results from remaining too long at an exacting task.'" *United States v. New York Central R.R.*, 276 F.Supp. 532, 538 (N.D.N.Y.1967) (quoting from *Chicago & Alton R.R. v. United States*, 247 U.S. 197, 199, 38 S.Ct. 442, 62 L.Ed. 1066 (1918)). Stated another way, its purpose "is to promote the safety of passengers and employees of the railroads by making mandatory release from duty for a period sufficient to allow adequate rest for those engaged in the movement of trains." *United States v. Northern Pacific Ry.*, 224 F.Supp. 303, 304 (D. Minn.1963) (footnote omitted). Bearing in mind that the statute is aimed at violations by the employer and was established to promote safety, the Court would find it difficult to invalidate the Board's award merely because it found that plaintiff had been required to complete a form pursuant to a company bulletin which was also directed toward safety. It would seem unfair to deny the plaintiff reinstatement, had he ac-

tually worked beyond the statutory period, simply because he was following a company directive which he interpreted applicable to him. In any event, there is no evidence that plaintiff had actually been on duty beyond the statutory 16 hours. Both defendant's brief in support of its motion for summary judgment and the Board's award only state that plaintiff "had been on duty for almost sixteen hours."

## VI

■■■ Finally, defendant reasons that the Board's award is unenforceable because it is too vague and ambiguous as to money damages. Here the Court must agree. The award states that plaintiff "shall be reinstated with seniority rights unimpaired and with full pay for all time lost since March 4, 1966, until reinstated." The Order attached to the award states that compliance was to have taken place "on or before August 17, 1970." Defendant urges that the award does not specify (1) the manner in which the back pay should be calculated, (2) whether social security, taxes, or other additions or deductions should be considered, (3) whether earnings he has made or could reasonably have been expected to make since the discharge should be deducted, (4) where and to what position plaintiff should be reinstated, and (5) what constitutes "time lost."

In *Teamsters Local No. 25 v. Penn Transportation Corp.*, 359 F.Supp. 344 (D.Mass.1973), this district has already recognized the

> well established principle that ambiguities and uncertainties of labor arbitration awards should not be resolved by the court acting as interpreter. Rather the proper approach is to resubmit the award to its author for clarification.

*Id.* at 350.

There is law to support the position that the Board should state whether an employer may deduct from a back pay

award the "outside interim earnings" of an improperly discharged employee. *International Brotherhood of Electrical Workers, Local 369 v. Olin Corp.*, 471 F.2d 468, 472–73 (6th Cir. 1972). *See Sweeney v. Florida East Coast Ry.*, 389 F.2d 113, 116 (5th Cir. 1968); *Brotherhood of Railroad Signalmen v. Chicago, Milwaukee, St. Paul & Pacific R.R.*, 284 F.Supp. 401, 405–06 (N.D.Ill. 1968).

In addition, there is support for the position taken by plaintiff that the Court may determine the amount that plaintiff should be awarded by considering the amount earned by the employee immediately below plaintiff in seniority during the period in question. *See, e. g., Pompeo v. Erie-Lackawanna R.R.*, 346 F.Supp. 1311, 1315 (W.D.N.Y.1972); *Raabe v. Florida East Coast Ry.*, 259 F. Supp. 351, 355 (M.D.Fla.1966); *Barrett v. Manufacturers Ry.*, 254 F.Supp. 376, 380 (E.D.Mo.1966). Here, however, it is not stated in the record who that individual is or what he has earned during the period of plaintiff's discharge.

Accordingly, the following order shall be entered:

1. Defendant's Motion for Summary Judgment is denied.

2. Plaintiff's Motion for Summary Judgment is allowed subject to the following:

 Within seven days the parties are to initiate further proceedings before the Board seeking clarification of the following:

 (a) The manner in which the back pay shall be calculated.

 (b) Whether Social Security, taxes, interest, or salary adjustments should be taken into account.

 (c) Whether earnings plaintiff has made or could reasonably have been expected to make since discharge should be deducted, and if so, what that amount is.

 (d) Where and to what position plaintiff should be reinstated.

 (e) What constitutes the "time lost" in this case.

Within fourteen days after the receipt of the Board's clarification of its award, the parties shall prepare and submit to the Court a final order in conformance with the Board's clarification and this memorandum.